Louis J. D'AMICO, Petitioner,

v.

COX CREEK REFINING COMPANY, Respondent.

Civ. A. No. HAR-89-1337.

United States District Court, D. Maryland.

June 2, 1989.

Marc A. Stefan, Atty., Joseph Desio, Acting Gen. Counsel, D. Randall Frye, and Harold J. Datz, Assoc. Gen. Counsel, Albert W. Palewicz, Regional Atty., Joseph J. Baniszewski, Deputy Regional Atty., N.L. R.B., Baltimore, Md., for petitioner.

Gil A. Abramson, Stephen M. Silvestri, Gary S. Eidelman (Semmes, Bowen & Semmes), Baltimore, Md., for respondent.

Robin Alexander, Gen. Counsel, for United Electrical, Radio and Machine Workers of America (U.E.).

CATHERINE C. BLAKE, United States Magistrate.

## MEMORANDUM AND ORDER

On January 27, 1989, the United Electrical Radio and Machine Workers of America ("the union") filed several charges with the National Labor Relations Board ("the Board") alleging that Cox Creek Refining Company ("the company") had engaged in, and was continuing to engage in, unfair labor practices within the meaning of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* ("the Act"). The charges were referred to Louis J. D'Amico, Regional Director of Region 5 of the board, whose office is located in Baltimore, Maryland. After an investigation conducted by various Board employees, the General Counsel of the Board issued an order consolidating cases, consolidated complaint and notice of hearing on March 13, 1989. *See* 29 U.S.C. § 160(b).[1] On April 12, 1989, the General Counsel issued a second consolidated complaint. Both charge the company with unfair labor practices under § 8(a)(1), (3) and (5) of the Act, 29 U.S.C. § 158(a)(1), (3) and (5). A Board hearing before an administrative law judge is scheduled to begin on June 12, 1989.

The circumstances underlying the Board's complaints arise out of an attempt

---

1. 29 U.S.C. § 160(b) provides that:

 Whenever it is charged that any person had engaged in or is engaging in any such unfair labor practice, the Board or any agent or agency designated by the Board for such purposes, shall have power to issue and caused to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not less than five days after the serving of said complaint....

by the union to organize certain company workers. Organizational efforts began in late December 1988. On January 26, 1989, in connection with an attempt by a number of employees to present a petition to company management relating to their desire for union representation, one employee, Jerry Hood, was discharged.[2] Thereafter approximately 70 workers left their jobs at the company, and the great majority have not returned. The parties dispute whether what occurred amounted to a discharge of the employees by the company or a work stoppage or other protected activity by the employees. The complaints against the company also allege that the firing of Mr. Hood was unlawful and set forth numerous instances of alleged attempts to interfere with the employees' and union's organizational efforts.

A related issue concerns the amount of support the union had obtained prior to January 26, 1989. No election had been conducted as of that date. It is the Board's contention, however, that a majority of the employees that would be represented by the union had either signed organizational cards or otherwise indicated their desire for union representation prior to the alleged mass discharge.

On May 5, 1989, Mr. D'Amico, the Regional Director, filed a petition in this court seeking an injunction under § 10(j) of the Act, 29 U.S.C. § 160(j), pending the final disposition of the complaints to be heard by the Board.[3] The petition seeks an order enjoining the company from a variety of activities related to their employees' right to support the union, and ordering the company to offer reinstatement to the discharged or striking employees, to recognize and bargain with the union as the exclusive collective bargaining representative of the employees, and to post copies of the court's order at the company's Baltimore, Maryland facility. The company filed its answer to the petition on May 23, 1989, and a show cause hearing is scheduled before the Honorable John R. Hargrove on June 9, 1989. Discovery disputes in this case have been referred to me by Judge Hargrove for resolution pursuant to 28 U.S.C. § 636(b) and Local Rule 80. Oral argument was heard on May 30, 1989. Presently pending are the company's motion to compel, the Board's motion for a protective order, and the union's motion to quash a subpoena.

■ A court's decision whether to issue injunctive relief under 29 U.S.C. § 160(j) involves a two-part inquiry:

1) whether the Regional Director has "reasonable cause" to believe that the unfair labor practices for which interim relief is sought in fact occurred; and

2) whether the injunctive relief sought would be "just and proper" under the circumstances.

*Scott v. El Farra Enterprises, Inc.,* 863 F.2d 670, 673 (9th Cir.1988); *Gottfried v. Frankel,* 818 F.2d 485, 493 (6th Cir.1987); *Eisenberg v. Lenape Products, Inc.,* 781 F.2d 999, 1003 (3d Cir.1986); *Humphrey v. International Longshoremen's Association AFL–CIO,* 548 F.2d 494, 497 (4th Cir. 1977); *D'Amico v. A.G. Boone Co.,* 647 F.Supp. 1546, 1549 (W.D.Va.1986).

■ The reasonable cause standard does not require the court to conclude that an unfair labor practice has been committed. Rather the court must decide, viewing the evidence in the light most favorable to the Board, whether that evidence could reasonably support a finding that the employer violated the Act. The standard is "relatively lenient and requires considerably less

---

**2.** The company claims that Mr. Hood was fired for violating company rules in that he was not on his break time when he and others attempted to present the petition.

**3.** 29 U.S.C. § 160(j) provides that:
The Board shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition, the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

than a showing that the petitioner will eventually prevail on the merits." *D'Amico v. Boone, supra,* 647 F.Supp. at 1549. *See also, Scott v. El Farra, supra,* 863 F.2d at 673–74; *Gottfried v. Frankel,* supra, 818 F.2d at 493; *Squillacote v. Graphic Arts International Union, AFL–CIO,* 540 F.2d 853, 858 (7th Cir.1976); *Fuchs v. Jet Spray Corp.,* 560 F.Supp. 1147, 1150 (D.Mass.1983), *aff'd without opinion,* 725 F.2d 664 (1st Cir.1983).

The Fourth Circuit has stated that:

[W]hile a temporary injunction should not issue unless there is some reasonable possibility that the Board will ultimately enter an enforceable order, the General Counsel's resolution of disputed issues of law and fact should be accorded considerable deference in determining whether such possibility exists.

*Humphrey v. ILA, supra,* 548 F.2d at 498. On questions of law, the Board's view should be sustained unless the court is convinced it is wrong. *Kaynard v. Palby Lingerie, Inc.,* 625 F.2d 1047, 1051 (2d Cir. 1980); *Humphrey v. ILA, supra,* 548 F.2d at 497. Moreover, credibility determinations and other resolutions of conflicts in the evidence are generally left to the administrative law judge at the Board hearing. A showing that the facts relied on by the Regional Director are in dispute does not preclude the issuance of a temporary injunction. A genuine factual dispute for the Board to resolve is consistent with a finding that the reasonable cause standard has been met. *Scott v. El Farra, supra,* 863 F.2d at 673; *Gottfried v. Frankel, supra,* 818 F.2d at 493, 496; *Dawidoff v. Minneapolis Building & Construction Trades Council,* 550 F.2d 407, 410–11 (8th Cir.1977); *Fuchs v. Jet Spray Corp., supra,* 560 F.Supp. at 1150 n. 2.

■ Accordingly, a full evidentiary hearing is not required and a court may base its decision on affidavits and other documentary evidence. *Scott v. El Farra, supra,* 863 F.2d at 676; *Fuchs v. Hood Industries,*

*Inc.,* 590 F.2d 395, 397 (1st Cir.1979); *Squillacote v. Graphic Arts, supra,* 540 F.2d at 860.[4]

A finding of reasonable cause does not automatically require the court to grant the injunctive relief sought by the Regional Director. Whether injunctive relief is just and proper is within the court's discretion and depends on whether the relief sought is reasonably necessary to preserve and restore the status quo, serve the public interest, and further the remedial purposes of the Act. *D'Amico v. Boone, supra,* 647 F.Supp. at 1549. The Board is not required to show irreparable harm. *NLRB v. Aerovox Corp.,* 389 F.2d 475, 477 (4th Cir.1967), *Smith v. Old Angus, Inc.,* 82 LRRM 2930 (D.Md.1973). In appropriate cases, a court may order reinstatement and even require bargaining with a union though no election has taken place. *Gottfried v. Frankel, supra,* 818 F.2d at 494, 495–96; *Kaynard v. MMIC, Inc.,* 734 F.2d 950, 953–54 (2d Cir.1984); *Fuchs v. Jet Spray Corp., supra,* 560 F.Supp. at 1156. A bargaining order is appropriate, however, only if a clear majority of employees at one point supported the aggrieved union, and thereafter the employer engaged in unfair labor practices that made a fair election impossible. *Kaynard v. Palby Lingerie, supra,* 625 F.2d at 1054. *See NLRB v. Gissel Packing Co.,* 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547, *reh'g denied,* 396 U.S. 869, 90 S.Ct. 35, 24 L.Ed.2d 60 (1969).

Against this background, the specific discovery requests at issue will be examined. The parties agree that the Federal Rules of Civil Procedure apply to a 10(j) proceeding.

Rule 26(c) provides that "... for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." The Rule "confers broad discretion on the trial court to decide when a protective order is appropriate and what

---

**4.** Another alternative is that suggested in *Fuchs v. Hood:* if the district court believes additional evidence is necessary, it may stay its decision pending completion of the administrative hearing and receipt of the record of those proceedings, although it should not wait for the final decision by the Board, *see* 590 F.2d at 398; *see also Kaynard v. Palby Lingerie, supra,* 625 F.2d at 1050–51.

degree of protection is required." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36, 104 S.Ct. 2199, 2209, 81 L.Ed.2d 17 (1984).

 On May 8, 1989, the company served a request for production of documents on the Board and noted the deposition of a Board investigator, Field Examiner Betty Hickey, who was responsible for gathering most of the affidavits obtained by the Board after the union's charges were filed and prior to the Board's issuance of complaints under 29 U.S.C. § 160(b). Also on May 8, 1989, the company filed a motion to compel an expedited response to its document requests.

On May 15, 1989, the Board filed a motion and memorandum seeking a protective order preventing the deposition of Betty Hickey, limiting the production of documents, and setting certain conditions prior to the disclosure of other documents. The Board argued that the deposition of Ms. Hickey and production of internal notes and memoranda would violate the privilege against disclosure of the agency's deliberative processes and the attorney work-product privilege, and further that much of the information sought would be irrelevant to the limited issues before this court. The company filed a memorandum in opposition on May 19, 1989, denying that it sought to discover the deliberative or decision-making process of the Board but arguing that it needed to depose Ms. Hickey, and to discover the factual portions of the Board's investigative files, because those portions were not privileged and because it had reason to believe Ms. Hickey did not conduct her investigation properly and without bias. The company also objected to the conditions requested for the production of other documents.

On May 19, 1989, the Board filed a supplemental memorandum and on May 22, 1989, the company replied. At the hearing on May 30, 1989, it appeared that the issues had been somewhat, although not substantially, narrowed. The court was furnished a list of certain Board documents that had been provided, and others that had not. (Defendant's Ex. 2). In addition, on that same day, the Board provided the company's counsel with copies of all the signed authorization cards and employee petitions it will rely on to prove that a majority of the employees sought union representation prior to the alleged discharges on January 26, 1989, and all the affidavits obtained by Ms. Hickey and others in the course of the investigation, including affidavits that relate to the date of signing or the authenticity of signatures on the cards or petitions. It was agreed that the documents would not be further disclosed subject to this court's ruling on the protective order issues.

The Board's motion to prevent the deposition of Ms. Hickey will be Granted. Given the limited scope of the court's inquiry into reasonable cause, and in particular that it is not the district court's function to resolve disputed facts, a deposition of Ms. Hickey in the hopes of partially discrediting the affidavits and other evidence the Board will rely on at the hearing would be of little or no relevance.[5] *See San Francisco–Oakland Newspaper Guild v. Kennedy,* 412 F.2d 541, 546 (9th Cir.1969). The scope and adequacy of the Board's investigation, moreover, is not a proper issue before the court in a § 10(j) proceeding. *See Madden v. International Hod Carriers,* 277 F.2d 688, 693 (7th Cir.1960), *cert. denied,* 364 U.S. 863, 81 S.Ct. 105, 5 L.Ed.2d 86 (1960); *Vincent v. Restaurant Employees,* 73 LRRM 2650, 2651 (N.D.N.Y.1969); *cf. Sperandeo v. Milk Drivers & Dairy Employees Local Union No. 537,* 334 F.2d 381 (10th Cir.1964). Further, as a practical matter, it is difficult to imagine how a deposition focusing on Ms. Hickey's conduct of her investigation could avoid intruding into the deliberative processes or protected work product of the agency.

 For similar reasons, the Board will not be required to produce the investigative reports, internal memoranda and file notes described on Defendant's Exhibit 2,

---

**5.** The Board does not intend to call Ms. Hickey as a witness at the 10(j) hearing. Further, I have considered the examples proffered by the company's counsel as indications of improper conduct by Ms. Hickey and do not find them persuasive.

specifically items 1–4 on p. 2 and the file notes referred to on p. 4.[6] The work-product privilege set forth in Fed.R.Civ.P. 26(b)(3) protects documents otherwise discoverable and "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative." It covers items such as witness statements and memos prepared by investigators as well as an attorney's own notes and memos. It is not necessary that suit has been filed, so long as litigation is a reasonable contingency. *See, APL Corp. v. Aetna Casualty & Surety Co.*, 91 F.R.D. 10, 15 (D.Md.1980); *Burlington Industries v. Exxon Corp.*, 65 F.R.D. 26, 42–43 (D.Md. 1974); *Stix Products, Inc. v. United Merchants & Manufacturers, Inc.*, 47 F.R.D. 334, 337 (S.D.N.Y.1969). To obtain work-product material, the party seeking production must show "substantial need and inability to obtain the equivalent without undue hardship." *Upjohn Co. v. United States*, 449 U.S. 383, 400, 101 S.Ct. 677, 688, 66 L.Ed.2d 584 (1981); *Burlington v. Exxon, supra*, 65 F.R.D. at 43. Material that would disclose an attorney's mental impressions, conclusions or legal theories is even more rigorously protected. *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730, 734 (4th Cir.1974), *cert. denied*, 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975).

The distinction relied on by the company between the Board's "investigative" function and its "prosecutorial" function, which the company argues entitles it to production of factual material compiled prior to the filing of complaints, is not persuasive. Here the only function of the Board's investigation was to evaluate the charges filed by the union in preparation for beginning, or determining not to begin, litigation against the company. *See NLRB v. Building & Constr. Trade Council*, 131 LRRM 2022 (3d Cir., opinion of special master, April 6, 1989); *Sperandeo v. Milk Drivers, supra*, 334 F.2d at 384 (recognizing possibility that work-product privilege could apply). Cases discussing the deliberative process privilege in the context of other agencies' non-litigative functions have limited applicability to the claim of work-product privilege raised here. *Cf., Mobil Oil Corp. v. Dep't of Energy*, 520 F.Supp. 414 (N.D. N.Y.1981).

■ Separate issues are raised by the Board's request for restrictions on the company's disclosure and use of the affidavits, authorization cards and petitions described above, upon all or some of which the Board will rely in seeking an injunction. Considering that this union has never been certified as the representative of any Cox employees, the bargaining order sought by the Board may have in some ways more far-reaching and significant effects on all Cox employees than the possible reinstatement of the allegedly discharged workers. On this issue, the question of how much support the union had gathered and by what date is of particular importance. Even if discovery efforts might do little to affect the court's decision on reasonable cause, the information sought by the company might influence the court's further decision on the scope of "just and proper" relief.

The protections sought by the Board, which would preclude any disclosure of the affidavits or authorization cards to company officials and any contact with affiants or card-signers except through Board counsel, go too far, particularly in light of the standards for employee interviews established by the Fourth Circuit in the context of administrative hearings on unfair labor practice charges. Recognizing the inherently coercive nature of the employer-employee relationship, the court found adequate the protections established in *Johnnie's Poultry Co.*, 146 NLRB 770 (1964), *enforcement denied*, 344 F.2d 617 (8th Cir. 1965). The employee must be advised of the purpose of the questioning, that his participation is voluntary, that no reprisals will be taken if he declines to participate or based on his answers if he does participate, and that the questioning must be non-coer-

---

**6.** At the hearing, the company stated it was not requesting items 5–9 on p. 2 of the list, or 2–3 on p. 3. (Defendant's Ex. 2).

cive and not exceed legitimate purposes by prying into other union matters. *Standard–Coosa–Thatcher Carpet Yarn Div., Inc. v. NLRB*, 691 F.2d 1133, 1140–41 (4th Cir.1982), *cert. denied*, 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983); *NLRB v. Tamper, Inc.*, 522 F.2d 781, 787 (4th Cir. 1975).

In connection with the Board's request that contact be made through Board counsel, the company points to the decision in *IBM v. Edelstein*, 526 F.2d 37, 42 (2d Cir. 1975), supporting the principle that "counsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private, without the presence or consent of opposing counsel and without a transcript being made."

It is the concern of the court to protect as fully as possible the rights of the current and former employees the company may seek to interview, without unduly restricting the company's ability to defend itself against the Board's charges. The following restrictions will be imposed:

1. The identity of any persons who signed union authorization cards or petitions will not be disclosed to company officials; [7]

2. The contents of any affidavit and the identity of any affiant will not be disclosed to company officials [8] except to the limited extent necessary to allow counsel to discuss the accuracy of the facts set forth in the affidavit with the officials to whom the affidavit relates;

3. Prior to conducting an interview with any present or former company employees, counsel must advise that person that:

a) the National Labor Relations Board has filed complaints against Cox Creek accusing it of unfair labor practices in connection with the organizational efforts of the United Electrical union; the company has denied those charges, and the purpose of the interview is to obtain information relating to the charges;

b) participation in the interview is voluntary;

c) he may refuse to answer any or all questions;

d) no action affecting his job status, either in the form of a benefit such as a promotion or reinstatement, or in the form of a reprisal, such as discharge, will be taken against him based on his refusal to answer questions or on the contents of any answers he does give; and

e) he may if he chooses have present during the interview an attorney, including the Board attorney, but he is not required to do so.

This required advice will be set forth in a separate Order signed by the court, a copy of which must be shown to the prospective interviewee by the company's counsel. The Board's request that present and former employees be contacted through Board counsel will be denied, however, as will its request for a general posting of the court's discovery order. I will also deny the Board's request for advance notice and court permission before any disciplinary action involving any employee who has signed a union authorization card or an affidavit. No published authority for such a remedy as part of the discovery process has been provided.

■ The other discovery matter before me is the company's request to depose a union organizer, Peter French, and to obtain copies of certain union documents. The union has objected to the deposition on the grounds of relevance and undue burden, arguing that Mr. French's testimony is not necessary to the reasonable cause determination under § 10(j) and that a deposition would be unduly burdensome because union counsel is located in Pittsburgh.[9] It

---

7. Other than Scott Armentrout, Esq., Cox General Counsel, who is working with outside counsel in preparing to defend this case. Mr. Armentrout may not use the information for any purpose other than this litigation.

8. See footnote 5, *supra.*

9. Union counsel also contends that company counsel knew she would be in Baltimore on May 16, 1989, and should have tried to schedule the deposition on that date.

has objected to the production of certain documents on the grounds of relevance and privilege.

The company's request to take the deposition of Mr. French will be granted. While the union is not a party to the 10(j) proceedings, it is possible Mr. French may be a witness. He has provided several affidavits on which the Board will rely at the 10(j) hearing. Substantial portions of those affidavits relate to the crucial question of how many employees had signed authorization cards or petitions prior to January 26, 1989.

Mr. French's deposition, however, will be limited to the matters contained in his affidavits and any personal factual knowledge he may have of the events alleged as unfair labor practices in the Board's petition for injunction. His opinion about whether employees were fired or walked off, and whether particular company actions or statements constitute unfair labor practices, is not relevant, nor is his testimony concerning union organizational methods or policies generally, or what he may have said to employees to encourage union support.

The documents not produced by the union in response to deposition subpoenas have been categorized as follows:

a) retained copies of authorization cards;

b) the employee handbook;

c) legal pleadings;

d) correspondence to and from politicians;

e) a news release concerning the issuance of the first Board complaint;

f) Mr. French's reports to the national office of the union;

g) Mr. French's notes of staff meetings and things to do; and

h) lists of workers and their phone numbers.

**10.** With the exception of the news release, which may be in the possession of company counsel already. There is also one additional union newsletter which union counsel is attempting to locate.

(*See,* Memorandum in Support of Union's Motion to Quash at 12–14). During the telephone conference call held (on the record) immediately after the hearing in court on May 30, 1989, union counsel agreed to produce the copies of the authorization cards subject to whatever protective order might be issued. Company counsel stated they did not seek production of the handbook or pleadings. Union counsel was directed to send to the court for *in camera* review the other documents comprising categories d–h above. Those documents were received June 1, 1989.[10]

Most of the documents reviewed *in camera* are not relevant to the present proceedings. The correspondence with politicians, for example, consists of the union's attempts to enlist the support of various elected officials, and does not contain any relevant factual information. The bulk of Mr. French's notes and reports similarly relate to operational issues, and indeed some have nothing at all to do with Cox Creek. There is, however, one portion of a document labeled "staff report from December 6–January 6" that relates directly to the matters discussed in Mr. French's affidavit concerning the number of employees supporting the union. There is also a list of employee names and phone numbers which may relate either to union support or membership in the proposed bargaining unit. Those documents should be produced under protective order limiting their disclosure to company counsel.[11] For similar reasons, the Board documents listed as items 1 and 4 on p. 3 and 2 on p. 4 of Defendant's Exhibit 2 should be produced to counsel only.

Accordingly, for the reasons set forth above, it is hereby ORDERED that:

1. The motion of respondent to compel expedited response to request of respondent for production of documents is DENIED as moot;

**11.** The documents in question will be made a part of the court file, under seal. Those that have been ordered produced will be provided to union counsel first and she will be given a brief opportunity to file objections with Judge Hargrove, if she finds it necessary.

2. The motion of petitioner for protective order is GRANTED in part and DENIED in part as set forth above;

3. The motion of United Electrical to quash subpoena is DENIED in part and GRANTED in part as set forth above;

4. The union authorization cards, employee petitions, affidavits, other Board documents listed in Defendant's Exhibit 2, and the union documents referred to above, shall be subject to the following restrictions:

a) All such documentation shall be used for the purposes of this litigation only;

b) The identity of any persons who signed union authorization cards or petitions will not be disclosed to Cox Creek Refining Company officials, other than Scott Armentrout, Esq., Cox general counsel;

c) The documents described on Defendant's Exhibit 2 and the union documents referred to above will not be disclosed to Cox Creek Refining Company officials other than Mr. Armentrout;

d) The contents of any affidavit and the identity of any affiant will not be disclosed to Cox Creek Refining Company officials, other than Mr. Armentrout, except to the limited extent necessary to allow counsel to discuss the accuracy of the facts set forth in the affidavits with the officials to whom the affidavits relate;

e) Prior to conducting an interview with any present or former company employees, Cox Creek counsel must advise that person as set forth in the attachment to this Order titled Advice to Present and Former Employees of Cox Creek Refining Company and must provide that person a copy of said attachment;

5. The Clerk shall mail copies of this Memorandum and Order to all counsel of record.

### ADVICE TO PRESENT AND FORMER EMPLOYEES OF COX CREEK REFINING COMPANY

1. The National Labor Relations Board has filed complaints against Cox Creek accusing it of unfair labor practices in connection with the organizational efforts of the United Electrical union. The company has denied those charges, and the purpose of the interview is to obtain information relating to the charges.

2. Your participation in the interview is voluntary.

3. You may refuse to answer any or all questions.

4. No action affecting your job status, either in the form of a benefit, such as promotion or reinstatement, or in the form of a reprisal, such as discharge, will be taken against you based on your refusal to answer questions or on the contents of any answers you may give.

5. You may if you choose have present during the interview an attorney, including the National Labor Relations Board attorney, but you are not required to do so.