**Louis J. D'AMICO, Petitioner,**

v.

**COX CREEK REFINING COMPANY, Respondent.**

**Civ. A. No. HAR 89–1337.**

United States District Court, D. Maryland.

June 14, 1989.

See also 126 F.R.D. 501.

Marc A. Stefan (Joseph Desio, Acting Gen. Counsel, D. Randall Frye, Associate Gen. Counsel, Harold J. Datz, Associate Gen. Counsel, Albert W. Palewicz, Regional Atty., Joseph J. Baniszewski, Deputy Regional Atty., and the N.L.R.B., Region 5, Baltimore, Md., on the brief), for petitioner.

Gil A. Abramson (Stephen M. Silvestri, Gary B. Eidelman, and Semmes, Bowen & Semmes, Baltimore, Md., on the brief), for respondent.

## MEMORANDUM OPINION

HARGROVE, District Judge.

### I. INTRODUCTION

Currently pending before this Court is a request for injunctive relief under Section 10(j) of the National Labor Relations (Taft–Hartley) Act ("the Act"), 29 U.S.C. § 160(j) (1982). On 27 January 1989, Local 125 of the United Electrical Radio and Machine Workers of America ("Union") filed charges with the National Labor Relations Board ("NLRB") alleging that Cox Creek Refining Company ("Company") had engaged in, and was continuing to engage in, unfair labor practices in violation of sections 8(a)(1), (3), and (5) of the Act, 29 U.S.C. § 158(a)(1), (3), (5).

The charges were referred to Louis J. D'Amico, Regional Director of the NLRB's Region 5, in Baltimore, Maryland. Upon investigation by Board personnel, the Board's general counsel consolidated the cases and complaints, and set a hearing before an administrative law judge ("ALJ") on June 12, 1989. On May 5, 1989, Mr. D'Amico filed a petition ("Petition") in this Court seeking a temporary injunction under the applicable provisions of the Act, requesting relief pending the final disposition of the complaints to be heard by the NLRB. The Petition seeks an order: (1) enjoining the Company from a variety of activities—namely making certain statements deemed to be threats, coercion, and intimidation—related to their employees' rights to support the Union; and (2) ordering the Company to offer reinstatement to the discharged or striking employees. The Petition also seeks to have the Company: (3) explicitly recognize and bargain with the Union as the exclusive collective bargaining representative of the employees, and (4) to post copies of the Court's order at the Company's Baltimore facility. The Petition has been briefed in full, with volu-minous attachments and exhibits on behalf of both parties; these have been examined by the Court. This Court heard oral arguments on June 9, 1989.

### II. BACKGROUND

The Union is a labor organization within the meaning of section 2(5) of the Act; it is constituted in whole or in part for the purpose of representing employees in negotiations over such items as wages, hours, terms and conditions of employment.

The respondent Company, a Maryland corporation with an office and place of business in Baltimore, has operated a copper refining and processing facility (the "Plant") in Anne Arundel County, Maryland since August, 1987. It is engaged in commerce and in operations affecting commerce as defined in sections 2(6) and (7) of the Act. The Company states that over two hundred employees were employed at the Plant at the time of the circumstances giving rise to this action.

These events began in December, 1988, when some of the Company's employees initiated efforts to unionize its work force. The Union held meetings and conducted other activities in its effort to garner support. The record indicates that the Plant's supervisory personnel were none too supportive of these activities.

In a speech to employees on January 12, 1989, the Company's President, Thomas Murphree, made numerous statements interpreted as threatening, intimidating, and/or coercive. *See, e.g.,* Memorandum of Points and Authorities in Support of Petition for Injunction, Exhibit 4 (Affidavit of Deborah L. Lindsey), Exhibit 10 (Affidavit of James P. Mewshaw), Exhibit 13 (Robert C. Dannemann); *cf.* Respondent's Memorandum and Exhibits in Opposition, Exhibit 31. While the prepared script, appended to the respondent's brief, looks innocuous enough, the conflicting interpretations given by his employees, coupled with the attendant circumstances at the Plant, conveys to this Court a significantly different impact than that adduced by the Company. *See* Respondent's Memorandum & Exhibits

at 39–42; Exhibit 31; *cf.* Petitioner's Memorandum & Exhibits at 4, Exhibits 8–10.

Following that speech, certain of the employees continued to meet, and conduct activities (e.g. a button and badge-wearing day). The organizational effort reached its climax on January 26, 1989, when a group of employees sought to present to management personnel, specifically Mr. Murphree, a petition expressing their desire for Union representation. In the face of Mr. Murphree's refusal to see the employees, one of their number, Jerry Hood, was discharged. The Company maintains that Mr. Hood violated a long-standing rule regarding break time; the Union's complaints against the Company allege that Mr. Hood's firing was unlawful. Thereafter, approximately seventy-four employees left their jobs with the Company; only five have returned.

The parties dispute whether the events of January 26 were tantamount to a discharge of the employees or a work stoppage (or some other protected activity). What is known is that shortly thereafter, all of the employees in question—except Jerry Hood—were listed as "terminated" in the Company's computer files. Further, the Company had terminated all of their benefits as of January 26, 1989. *See* Petitioner's Memorandum & Exhibits, Exhibit 23.

The NLRB avers that the Union's organizing efforts have all but ceased since January 26. *See, e.g.,* Deposition of Peter French, at 76–80. Conversely, the Company maintains that union related activities are still permitted; counsel stated in open court that there are persons who remain in the Company's employ who supported Union activity.

### III. MAGISTRATE BLAKE'S FINDINGS

Preliminary discovery disputes were referred to United States Magistrate Catherine C. Blake for resolution pursuant to 28 U.S.C. § 636(b) and Local Rule 80 (D.Md.).

On May 8, 1989, the Company served upon the Board a request for production of documents, and noted the deposition of Field Examiner Betty Hickey, an investigator for the NLRB. The Company filed a concomitant Motion to Compel an expedited response to these requests.

In its response one week later, the NLRB filed a motion seeking a protective order (1) preventing the deposition of Ms. Hickey, (2) limiting the production of documents, and (3) setting certain conditions prior to the disclosure of other documents. The Company timely filed its opposition.

Finally, the Union filed a motion to quash the Company's request to depose a Union organizer, Peter French, on the grounds of relevance and undue burden—alleging that Mr. French's deposition was not necessary to the reasonable cause determination discussed *infra.*

After oral argument on May 30, 1989, Magistrate Blake decided the motions as follows:

(1) The Company's motion to compel expedited response to its requests was denied as moot.

(2) The NLRB's motion for protective order was granted as to the issues of deposing Ms. Hickey, and producing NLRB investigative reports, internal memoranda, and file memoranda; it was denied in part as to its request for restrictions on the Company's use of affidavits, union authorization cards, and petitions produced in accordance with Magistrate Blake's order. *See D'Amico v. Cox Creek Refining Company,* 126 F.R.D. 501, 508, 509 (D.Md., 1989) (Blake, Mag.).

(3) The Union's motion to quash was denied as to the issue of taking Mr. French's deposition, but limited to matters contained in his affidavits and any personal factual knowledge he may have of events alleged as unfair labor practices. Other opinion evidence was deemed not relevant. *See Cox Creek* 126 F.R.D. at 507, 508 (Blake, Mag.).

### IV. DISCUSSION

#### A. Section 10(j) Injunctive Relief

In deciding whether to issue Section 10(j) injunctive relief under the Act, the Court employs a two-part analysis:

(1) whether the Regional Director (Mr. D'Amico) has "reasonable cause" to believe that the unfair labor practices for which interim relief is sought in fact occurred; and

(2) whether the relief sought would be "just and proper" under the circumstances. *Scott v. El Farra Enterprises, Inc.*, 863 F.2d 670, 673 (9th Cir.1988); *Humphrey v. International Longshoremen's Association AFL-CIO*, 548 F.2d 494, 497 (4th Cir. 1977); *D'Amico v. A.G. Boone Co.*, 647 F.Supp. 1546, 1549 (W.D.Va.1986).

### 1. Reasonable Cause

■ The district court's evidentiary role in this proceeding is limited: the reasonable cause standard does not require the Court to conclude that an unfair labour practice has been committed. *Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076, 1083 (3d Cir.1984). Evidence is to be viewed in the light most favorable to the NLRB in deciding whether that evidence could reasonably support a finding that the employer violated the Act. *Seeler v. Trading Post, Inc.*, 517 F.2d 33, 37 (2d Cir.1975). This standard is "relatively lenient and requires considerably less than a showing that the petitioner will eventually prevail on the merits." *D'Amico v. Boone*, 647 F.Supp. at 1549; *see also, Gottfried v. Frankel*, 818 F.2d 485, 493 (6th Cir.1987). The factual findings are set aside only if clearly erroneous. *Gottfried*, 818 F.2d at 493.

■ On questions of law, the NLRB's view should be sustained unless the Court is convinced it is wrong. *Kaynard v. Palby Lingerie, Inc.*, 625 F.2d 1047, 1051 (2d Cir.1980); *Humphrey v. ILA*, 548 F.2d at 497. Indeed the Fourth Circuit notes that "the General Counsel's resolution of disputed issues of law *and* fact should be accorded *considerable* deference in determining" whether there is a reasonable possibility that an enforceable NLRB order will ultimately issue. *Humphrey v. ILA*, at 498 (emphasis added). Still, this Court should not treat the Board's version as presumptive, and should note its own independent review. *See Humphrey v. United Farm Credit Bureau of America*, 99 LRRM 349, 3461 (D.Md.1978). Resolution of credibility determinations and conflicts in evidentiary presentations are generally left for the ALJ to decide at the Board hearing. *See Gottfried*, 818 F.2d at 493–94.

### 2. Just and Proper

■ Should the Court make a finding of reasonable cause, this does not *ipso facto* warrant imposition of the relief sought by the Regional Director. Whether such injunctive relief is "just and proper" is within the Court's discretion. The Court must consider: (1) whether the relief is necessary to preserve and/or restore the *status quo* at the time of the alleged unfair labour practices; (2) whether the relief will serve the public interest; and (3) further the remedial purposes of the Act. *D'Amico v. Boone*, 647 F.Supp. at 1549.

■ In preserving and/or restoring the *status quo*, this Court may order reinstatement and even require bargaining with a union—though no formal election has taken place. *See, e.g., Gottfried v. Frankel*, 818 F.2d 485, 493 (6th Cir.1987). A bargaining order may be appropriate in a section 10(j) proceeding if a clear majority of employees expressed support for the aggrieved union at some time prior to the onset of the unfair labor practices *and* thereafter the employer engaged in unfair labor practices that made a fair election impossible. *Kaynard v. Palby Lingerie*, 625 F.2d at 1054. *See NLRB v. Gissel Packing Co.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 *reh'g denied*, 396 U.S. 869, 90 S.Ct. 35, 24 L.Ed.2d 60 (1969). A union can gain representational rights of a company's employees in several ways, including the initiation of mandatory bargaining based on a show of support from a majority of the employees in the bargaining unit prior to the commission of alleged unfair labor practices. Additionally, an employer can voluntarily recognize the union, or the union can be certified by the NLRB following a secret ballot election.

## V. FINDINGS AND CONCLUSIONS

The record clearly indicates that the last two methods of recognition did not occur. The Company reports either 174 or 176 persons in its employ in a nonsupervisory capacity for purposes of this proceeding. *See* Respondent's Memorandum & Exhibits at 3, Supplemental Memorandum of Respondent at 3. Evidence produced before and during the hearing by the NLRB indicates that approximately ninety-three individuals had manifested expressions of support for the Union. Both sides noted in open court that one employee repudiated the desire to have Union representation. While the Company disputes the precise numbers involved, it offers no evidence refuting this number. Even though it had no affirmative duty to count heads, it seems implausible for the Company to now assert that no majority existed, when it made no effort to find out for itself. It is not this Court's function to ascertain the validity of the purported supporters; the Court need not engage in assessments of the authenticity of signatures, card validations, and the like. The Court finds that there was a sufficient number of employees designating the Union as their desired collective bargaining representative so as to constitute a majority of the nonsupervisory work force.

█ Respondent's counsel is quite correct in his emphasis that the Court consider *all* the evidence produced in this case. Having done this, the Court finds as fact from the credible evidence produced in this case that the Regional Director had abundant reasonable cause to believe that the alleged unfair labor practices in fact occurred. This Court, as it is required, takes the facts as presented. The record is replete with examples of intimidation on the part of supervisory personnel that began early on in the union organizing process, the most dramatic instance, perhaps, being the January 12 speech by Mr. Murphree. It is clear that the atmosphere existing at the Company prior to January 26 was hardly conducive to promulgation of union-related activities.

The Court is well aware that there is no affirmative obligation on the part of the employer to accept a union petition; however, the blatant rejection of the employees' attempt to present its petition is but another manifestation of the employer's anti-union sentiment which has permeated these proceedings.

Consideration of the entire record also compels the conclusion that there is reasonable cause to believe that the seventy-five employees in question were in fact terminated by the Company on or around January 27, 1989. The totality of the circumstances indicates that a large number of employees were "terminated" on one day, evidenced particularly by the company records and the concurrent cessation of Company benefits. While the Court certainly recognizes the desire of an employer to keep his or her business operational, it is still odd that the Company was soliciting applicants for positions the very next day. The fact that only five of the approximately 75 employees who left on January 26 went back to work in response to what was described by the Company as an offer to return—which was arguably prompted by the prospect of an NLRB investigation—must be considered additional evidence of the existence of reasonable cause to believe that the Company had engaged in commission of unfair labor practices.

Further, the Court finds that the injunctive relief requested by the Regional Director is indeed just and proper. A major purpose of the Act is to grant relief where "substantial injury" might accrue before the NLRB's ultimate disposition of the action. S.Rep. No. 105, 80th Cong., 1st Sess. 8 (1947).

Clearly, reinstatement of the aggrieved employees is crucial to restoration of the *status quo.* This will further serve the public interest by maintaining the integrity of the collective bargaining system: one can profess his or her desire for representation under such a system without fear of reprisal, in whatever form. In order for this to take place, however, it is imperative that the Company cease and desist practic-

es which impede such expression, and it will be so ordered.

The remedial purposes of the Act would be best served by reinstatement as well. A decline in Union interest and membership has already been shown, and employees are abandoning strike efforts as economic realities and other concerns compel them to explore alternatives. Again, the Company must cease and desist statements and/or conduct which chill expressions protected by the Act in order for this statute to have any substance.

Finally, this Court deems it appropriate to enter an Order designating the Union as the collective bargaining representative. Such interim relief will surely further the purposes of the Act, serve the public interest, and preserve the *status quo* in view of the NLRB's showing that a majority of employees had designated the Union as their collective bargaining representative prior to the events of January 26.

## VI. CONCLUSION

On review of the entire record and the oral arguments presented thereto, the Court will grant the Petitioner's request for injunctive relief in its entirety.

(1) The Company will be enjoined from making statements, and engaging in any other conduct constituting unfair labor practices in connection with activities protected under the Act;

(2) The Company will be required to offer reinstatement to employees discharged on January 26, 1989, and/or named in the complaints pending before the National Labor Relations Board;

(3) The Company will be required to recognize and bargain with the Union as the exclusive bargaining agent of its employees;

(4) The Company will be required to post copies of the Court's Order on employee bulletin boards in the Plant.

*ORDER*

For the reasons stated in the attached Memorandum Opinion, IT IS, this 13th day of June, 1989, by the United States District Court for the District of Maryland, ORDERED:

1. That the Respondent BE, and the same hereby IS, ENJOINED from making statements, and engaging in any other conduct constituting unfair labor practices in connection with activities protected under the National Labor Relations Act;

2. That the Respondent BE, and the same hereby IS, REQUIRED to offer reinstatement to employees discharged on January 26, 1989, and/or named in the complaints now pending in the related action before the National Labor Relations Board;

3. That the Respondent BE, and the same hereby IS, REQUIRED to recognize and bargain with the United Electrical Radio and Machine Workers of America as the exclusive collective bargaining agent of its employees;

4. That the Respondent SHALL POST copies of this Order on employee bulletin boards in its facilities.