916 P.2d 411 (1996)
129 Wash.2d 130
In re the Matter of FIRESTORM 1991.
Nos. 62318-1, 62212-4, 62213-2, 62214-1, 62215-9, and 62216-7.
Supreme Court of Washington, En Banc.
Argued November 15, 1995.
Decided May 16, 1996.
*412 Thorsrud, Cane & Paulich, Russell C. Love, Seattle, Bryan P. Harnetiaux, Spokane, Lane, Powell, Spears & Lubersky, Thomas W. Top, Michael Runyan, Seattle, amicus curiae for Washington Defense Trial Lawyers.
Lukins & Annis, Darrell W. Scott, Erika Balazs, Spokane, for Interested Party.
Charles C. Wiggins, Bainbridge Island, Julie A. Twyford, Spokane, Winston & Cashatt, Tim M. Higgins, Spokane, Amos R. Hunter, Des Moines, Edwards, Sieh, Hathaway, Smith & Goodfriend, Malcolm Edwards, Seattle, for Petitioner Firestorm 1991.
Paine, Hamblen, Coffin & Brooke, John C. Riseborough, Donald G. Stone, Robert Neate, Spokane, David A. Kulisch, Spokane, for Respondent.
JOHNSON, Justice.
This case involves the review of a trial court decision disqualifying Plaintiffs' counsel for conducting an ex parte interview with an expert hired by counsel for the Defendants. The trial court concluded this ex parte interview violated CR 26 and disqualification was the appropriate sanction. Based on the facts of this case and the discussion herein, we reverse the order of disqualification, order reinstatement of counsel, and remand for further proceedings.

FACTS
Shortly after filing suit in this case and after requesting, as reported in the media, for anyone with relevant information as to the cause of the fires to contact their office, Plaintiffs' counsel, Richard Eymann and Steve Jones, were contacted by Norman Buske. Buske told Jones that he had been hired by Paine, Hamblen, Coffin, Brooke & Miller (Paine Hamblen), counsel for several *413 area utility companies,[1] in investigating the 1991 firestorm, which consisted of over 90 wildfires. He told them he had important information on one of the fires, the Chattaroy fire, which was the fire relevant to this lawsuit. Buske told Jones he had extreme concern that his information would be concealed or hidden by the utility company Defendants and their counsel.
At Buske's request, Jones met with Buske at Buske's home on Saturday, October 16, 1993. Buske identified himself as a consulting scientist employed by Paine Hamblen and Inland Power to investigate Inland Power's involvement in the firestorm fires. At the time of this interview, Inland Power was not a party to the Chattaroy fire lawsuit. Buske stated he had spoken with David Kulisch (a partner in Randall & Danskin, P.S., and former associate in Paine Hamblen) and Donald Stone (partner in Paine Hamblen), who had both informed him he was a consulting expert whose observations and opinions would be sealed. Buske said he felt he had an ethical and moral duty to make his information available to the Plaintiffs.
Jones told Buske he believed it was legal for Buske to voluntarily disclose relevant factual information. Buske and Jones then went on to set some ground rules for a future statement by Buske about his factual observations. Buske wanted to make his statement as quickly as possible, again expressing fear the information he possessed would be sealed or taken from his control.
The next day, Eymann and Jones interviewed Buske at their law office. In addition to the statements he made, Buske delivered copies of pictures and notes he had taken while investigating the Chattaroy fire and which he still possessed. A transcript of this interview, edited jointly by Eymann and Buske, was delivered to David Kulisch's law office the day following the interview. On October 19, 1993, Kulisch's client, Inland Power, sent a letter to Eymann and Jones objecting to their contact with Buske. The letter asserted Eymann and Jones violated discovery and ethical rules in having had contact with an expert retained by Inland Power.
The next month, Eymann and Jones associated Tim Higgins and M.D. Williams of the firm Winston & Cashatt as counsel in the firestorm cases. After associating as counsel, Higgins sought an independent legal opinion as to whether his firm should review the Buske material. The attorney who reviewed the material opined he believed Eymann and Jones had not violated any ethical or discovery rules and it would be proper for Higgins' law firm to review the Buske material.
On July 12, 1994, Paine Hamblen filed a motion to disqualify counsel, seeking to disqualify both the Eymann law firm and Winston & Cashatt, and also for return of privileged information and materials. This motion was filed approximately nine months after the ex parte interview. The motion was argued on August 19, 1994 in the Superior Court for Spokane County. Inland Power joined Washington Water Power in this motion on the day the motion was argued. The only evidence considered by the court was in the form of affidavits; no testimony was heard by the court.
After hearing argument, the trial court issued an oral decision disqualifying Eymann, Jones, and the Eymann law firm, but not Winston & Cashatt. The judge found that Eymann and Jones were on notice as to the unclear status of Buske and had clearly violated CR 26 by conducting the interview. In not disqualifying Winston & Cashatt, the court stated Higgins had behaved appropriately in seeking an independent legal opinion before reviewing the materials, and had not violated the discovery rules. Without finding a violation of the rules, the court stated it would be illogical to disqualify Winston & Cashatt.
The court entered its written order of disqualification on September 29, 1994. The written order contained no findings of fact or conclusions of law. Eymann filed a motion for reconsideration with additional briefs and *414 affidavits from both sides, which was denied. We granted direct review.

ANALYSIS

I
We first must determine the proper standard of review in this case. The trial court found a violation of CR 26 based on the numerous affidavits submitted by the parties and the oral argument of counsel. No testimony was heard by the trial court. The trial court made no findings of fact and did not indicate which utility employed Buske as an expert. The court based its decision on its belief that Eymann and Jones should have been on notice as to the unclear status of Buske and the potential for the disclosure of privileged information. However, the court did not find any of the information disclosed was privileged.
Since this case involves the application of a court rule to a set of particular facts, this is a question of law, and will be reviewed de novo on appeal. See State v. Tatum, 74 Wash.App. 81, 86, 871 P.2d 1123, review denied, 125 Wash.2d 1002, 886 P.2d 1134 (1994). When a trial court fails to make any factual findings to support its conclusion, and the only evidence considered consists of written documents, an appellate court may, if necessary, independently review the same evidence and make the required findings. Bryant v. Joseph Tree, Inc., 119 Wash.2d 210, 222, 829 P.2d 1099 (1992).

II
Our review of this case requires us to determine whether counsel violates CR 26 by conducting an ex parte interview with an expert previously employed by counsel for an opposing party.
The trial court based its disqualification order on its holding that Eymann and Jones clearly violated CR 26, but the court did not indicate which specific provision of CR 26 it felt Eymann and Jones had violated. In makings its ruling, the trial court stressed the fact that under the discovery rules judicial oversight is critical to making proper determinations regarding discovery of experts and whether or not information is privileged. While this is correct, it does not resolve the issue here: we must decide which rule applies, what it requires, and what, if any, sanctions might apply.
CR 26 is the court rule governing discovery practice in all civil matters. In general, the rule allows for discovery of anything material to the litigation, except for things protected by privilege. CR 26(b)(1). Respondents assert both CR 26(b)(4) and CR 26(b)(5) prohibited Eymann and Jones from contacting Buske ex parte and require their disqualification. CR 26(b)(4) is more commonly known as the work product rule. It provides in relevant part:
Subject to the provisions of subsection (b)(5) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subsection (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials ... and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery ... the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.
CR 26(b)(4).
The other rule the Respondents claim was violated is CR 26(b)(5) which governs the discovery of experts.
Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subsection (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:
(A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, to state the substance of the facts and opinions to which the *415 expert is expected to testify and a summary of the grounds for each opinion.... (ii) A party may ... depose each person whom any other party expects to call as an expert witness at trial.
(B) A party may discover facts known or opinions held by an expert who is not expected to be called as a witness at trial, only as provided in rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.
CR 26(b)(5). The initial question we are faced with is whether CR 26(b)(4), CR 26(b)(5), or both, apply.
The key to answering this question is found in the first sentence of CR 26(b)(4): "Subject to the provisions of subsection (b)(5) of this rule...." The very text of the rule tells us that CR 26(b)(4) does not apply to situations falling within CR 26(b)(5). Because neither party disputes the fact Buske was an expert who acquired facts and developed opinions in anticipation of litigation arising out of the 1991 firestorm, CR 26(b)(5) is the specific provision at issue here.
Having determined CR 26(b)(5) is the rule at issue, we must now determine whether ex parte contact with an expert retained by counsel for an opposing party is a violation of CR 26(b)(5). Washington courts have not addressed whether ex parte contact with an opposing party's expert witness is a violation of the discovery or ethical rules.[2] The plain language of CR 26(b)(5), however, indicates ex parte contact with the experts of an opposing party is not allowed. The rule states "[d]iscovery of facts known and opinions held by experts ... may be obtained only as follows...." CR 26(b)(5) (emphasis added). The rule does not contemplate discovery of experts outside of its explicit requirements.
Based on the plain language of the rule, we hold as a general principle ex parte contact with an opposing party's expert witness is prohibited by CR 26. See Campbell Indus. v. M/V Gemini, 619 F.2d 24 (9th Cir.1980) (upholding district court's sanction for flagrant violation of Fed.R.Civ.P. 26(b)(4)[3] when attorney had ex parte contact with opposing party's expert witness). Discovery of expert witnesses retained by a party to the litigation may only be done within the strictures of CR 26.
The Petitioners argue Buske's status is critical in determining whether CR 26 applies to their conduct. Specifically, Petitioners assert if Buske was not employed by Washington Water Power, then he was not retained by a party to the Chattaroy fire litigation and CR 26(b)(5) does not apply. There is authority for the rule that expert witnesses retained by a nonparty are not protected by CR 26(b). See Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co., 148 F.R.D. 552 (S.D.W.Va.1993) (holding expert hired by company to investigate a fire was not protected by CR 26 in action between insurer and reinsurer); 8 Charles A. Wright, Arthur Miller & Richard L. Marcus, Federal Practice § 2024, at 354 (2d ed. 1994) (documents prepared by nonparty to present suit are not protected by CR 26(b)); Johnson v. McCay, 77 Wash.App. 603, 893 P.2d 641 (1995) (medical expert hired by insurance company who was not a party to the litigation is not prohibited by CR 26 from testifying for defendant).
At the time of the Buske interview, only Washington Water Power was a party to the Chattaroy fire lawsuit.[4] Plaintiffs argue Buske was an expert employed by Inland *416 Power to investigate its potential involvement in the firestorm fires. Portions of Buske's statements support this contention. The trial court, however, made no finding as to Buske's status. Additionally, the mere fact Buske was retained by Paine Hamblen was sufficient to put Eymann and Jones on notice as to the questionable status of Buske. Because we do not decide this case based on Buske's status, we need not resolve this issue, but point out that counsel should not generally make the determination unilaterally.
Because Eymann and Jones were on notice as to Buske's questionable status, and because Buske was employed by Paine Hamblen who, at the time, represented both Washington Water Power and Inland Power, we are satisfied the trial court was correct in finding Eymann and Jones violated CR 26(b)(5). When faced with an expert employed by opposing counsel, who may or may not technically be employed by an opposing party, counsel should always comply with CR 26(b)(5) in proceeding with any discovery or contacting that expert. After the procedures of CR 26(b)(5) have been initiated, the trial court may then fashion the proper form and scope of discovery, as required by the particular circumstances. In this case, the trial court was not initially given this opportunity. By unilaterally determining CR 26(b)(5) did not apply or that these were exceptional circumstances, Eymann and Jones did not conform their conduct (conducting an ex parte interview of Buske) with the requirements of CR 26(b)(5).

III
We are satisfied the trial court was correct in finding Eymann and Jones violated CR 26(b)(5); however, we conclude the trial court erred in imposing the sanction of disqualification. Sanctions for violations of CR 26(b) are not specifically addressed in CR 26(g), CR 37, or CR 11. Nevertheless, the trial court is not powerless to fashion and impose appropriate sanctions under its inherent authority to control litigation. The principles embodied in CR 11, CR 26(g), and CR 37, and discussed by this court in Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 336-56, 858 P.2d 1054 (1993), apply with equal force to sanctions decisions for CR 26(b) violations.
Two separate and distinct analyses support our holding reversing the order of disqualification: (1) the information disclosed by Buske was not privileged, and (2) disqualification as a sanction for a discovery rule violation does not adhere to the guidelines set forth in Fisons.
A. Privilege
Disqualification of counsel is a drastic remedy that exacts a harsh penalty from the parties as well as punishing counsel; therefore, it should be imposed only when absolutely necessary. See MMR/Wallace Power & Indus., Inc. v. Thames Assocs., 764 F.Supp. 712, 718 (D.Conn.1991). One situation requiring the drastic remedy of disqualification arises when counsel has access to privileged information of an opposing party. See Kurbitz v. Kurbitz, 77 Wash.2d 943, 947, 468 P.2d 673 (1970). The issue of access to privileged information frequently arises in conflict of interest cases. See First Small Business Inv. Co. v. Intercapital Corp., 108 Wash.2d 324, 337, 738 P.2d 263 (1987); Teja v. Saran, 68 Wash.App. 793, 798-99, 846 P.2d 1375, review denied, 122 Wash.2d 1008, 859 P.2d 604 (1993). Requiring disqualification after counsel has had access to privileged information preserves the public's confidence in the legal profession. Intercapital Corp. v. Intercapital Corp., 41 Wash.App. 9, 16, 700 P.2d 1213, review denied, 104 Wash.2d 1015 (1985).
Despite the limited applicability of this sanction, Respondents assert disqualification is the sole adequate remedy for ex parte contact with an opposing party's expert witness, relying on numerous cases from foreign jurisdictions for authority. See Br. of Resp't (Washington Water Power) at 37-40. In all of those cases, however, the person with whom counsel communicated ex parte was either a former integral employee of the opposing party or had access to litigation strategy; i.e., all involved counsel having access to privileged information via a former integral employee. E.g., County of Los Angeles v. Superior Court, 222 Cal.App.3d 647, *417 271 Cal.Rptr. 698 (1990) (counsel disqualified after initiating contact with opposing expert physician and assuring expert he was at liberty to talk with opposing counsel), review denied, Oct. 11, 1990; American Protection Ins. Co. v. MGM Grand HotelLas Vegas, Inc., 1986 WL 57464 (D.Nev.) (lawyer disqualified when ex-vice president for construction of opposing party initiates negotiations to serve as expert in construction fraud case); MMR/Wallace Power & Indus., Inc., 764 F.Supp. 712 (firm disqualified after hiring former employee of plaintiff corporation, who served as litigation liaison with plaintiff's counsel while employed as consulting expert in same litigation). Neither of those factors are present here to support a finding that Buske had access to privileged information. Buske was not an integral employee of Washington Water Power or Inland Power, nor was he privy to litigation strategy because no litigation was pending at the time of his association with Paine Hamblen. Additionally, in none of the above cited cases did the trial court rely on a violation of CR 26(b)(5) (or its equivalent) in ordering disqualification of counsel.
Furthermore, the record in this case supports our conclusion that the information disclosed by Buske was not privileged. Buske disclosed facts and opinions as to the cause of the Chattaroy fire, facts about the structure and conduct of Paine Hamblen's investigation, and his opinion about that investigation. The trial court was primarily concerned with the disclosures relating to Paine Hamblen's investigation strategies. These strategies are neither work product nor subject to the attorney/client privilege. "Facts, as such, remain discoverable, even though they may be embodied in a protected document" or conversation. 4 Lewis H. Orland & Karl B. Tegland, Wash.Prac., Rules Practice, at 34 (4th ed. 1992). Accordingly, the following facts (disclosed by Buske during his interview) are subject to discovery and are not protected by any privilege or work product doctrine: (1) an investigation was performed; (2) the personnel who participated in the investigation; (3) the observations made by those participants; and (4) Buske's investigation of the origin of the Chattaroy fire was terminated as soon as he found evidence implicating Washington Water Power. The only things which would be protected from disclosure are the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." CR 26(b)(4). Buske disclosed only one mental impression or conclusion of defense counselits opinion that his information constituted privileged work product. This conclusion is hardly confidential, considering Respondents have repeatedly asserted this in court.
The trial court's action regarding the firm of Winston & Cashatt lends additional support to the conclusion that Buske did not disclose privileged information. The disqualification of Eymann, Jones, and their law firm is inconsistent with the trial court's failure to disqualify their associated firm, Winston & Cashatt. Winston & Cashatt had reviewed the same information as Eymann and Jones. Thus, if the content of the Buske statement was what required disqualification then Winston & Cashatt should also have been disqualified. Alternatively, if the sanction was to punish Eymann and Jones (which is what the trial court stated) then the discussion of Fisons, infra, explains why disqualification was inappropriate.
B. Fisons
In this case, disqualification as a sanction for violating CR 26(b)(5) is not in line with the guidelines set forth in Fisons. The Fisons decision clearly sets forth the principles trial courts are to follow in fashioning appropriate sanctions.
First, the least severe sanction that will be adequate to serve the purpose of the particular sanction should be imposed. The sanction must not be so minimal, however, that it undermines the purpose of discovery. The sanction should insure that the wrongdoer does not profit from the wrong. The wrongdoer's lack of intent to violate the rules and the other party's failure to mitigate may be considered by the trial court in fashioning sanctions.
The purposes of sanctions orders are to deter, to punish, to compensate and to educate.
*418 Fisons, 122 Wash.2d at 355-56, 858 P.2d 1054 (citations omitted). The goal of these guidelines, and discovery sanctions in general, is to prevent attorney misconduct. To the extent possible, individual parties should not be penalized for their attorneys' misconduct in the discovery process. In light of these purposes and guidelines, the trial court erred in disqualifying Eymann and Jones.
In ordering disqualification, the trial court failed to follow the guidelines set forth by this court in Fisons. The record does not reveal whether the trial judge considered any other sanction before ordering Eymann, Jones, and their law firm disqualified; in fact, the trial court made no findings on this or any other issue. After considering the purpose of sanctions in light of the facts of this case, Eymann and Jones' intent and Paine Hamblen's conduct, we find disqualification was not the least severe sanction adequate to serve the purpose of sanctions in this case.
We begin by examining the facts of this case. While the particular facts of this case do not excuse counsel from following the strict requirements of the rule, several things are important in determining what, if anything, is the appropriate sanction. First, and most importantly, Buske represented himself as an expert for a nonparty and initially contacted Eymann and Jones. Buske felt compelled to act, in what he knew were difficult conditions, because of a perceived ethical and moral duty owed to the Plaintiffs.[5] This is not a case of plaintiff or defense counsel trolling for experts or seeking to take advantage of opposing counsel by hiring their discarded or unused experts. Counsel who seek to hire or consult former experts of opponents or former integral employees of opponents can violate CR 26 as well as create possible grounds for disciplinary action by the Bar. See, e.g., American Protection Ins. Co., 1986 WL 57464 (D.Nev.). In this case, the record does not indicate Eymann and Jones ever engaged in a search for former experts of Paine Hamblen; rather, Buske simply presented himself. Finally, the record does not indicate that either Eymann and Jones or Buske ever discussed or brought up the possibility of compensating Buske for his information.
Next, Buske told Eymann and Jones that this information would not have been made available absent his coming forward. The record shows Buske said counsel for Inland Power and Washington Water Power told him in 1993, immediately prior to his contact with Eymann and Jones, that his information would be suppressed or sealed, and this concerned him. Buske still had possession of the original notes and pictures as, evidently, these had not been requested of him. The structure and conduct of Paine Hamblen's investigation into the fires created in Buske an ethical dilemma and the reasonable belief that material information would be suppressed.
In addition to these facts, consideration of Eymann and Jones' intent in interviewing Buske negates the imposition of disqualification. Eymann and Jones' motive in talking with Buske was not to create delay or confusion. They were presented with a unique situation and attempted to determine the proper course of action. Faced with the allegation of discovery abuses by the Defendants and the possible loss of relevant factual information, Eymann and Jones owed a duty to their clients to act quickly and preserve Buske's information. Eymann and Jones disclosed the existence and substance of the interview to defense counsel the day after the interview.
On the other side, Paine Hamblen may have failed to mitigate the effects of this ex parte contact. Instead of immediately going to a judge, they waited nine months to bring this motion. The record reflects the delay in filing the motion to disqualify resulted in the Plaintiffs expending over 640 hours and incurring *419 corresponding expenses during the period of the delay. Delay in filing the motion to disqualify is suggestive of its use for purely tactical purposes and could be the sole grounds for denying a motion to disqualify. First Small Business Inv. Co., 108 Wash.2d at 337, 738 P.2d 263. While the record does not indicate why Paine Hamblen waited so long in bringing the motion to disqualify, the delay is evidence of Paine Hamblen's failure to mitigate in a timely manner.
Considering all the above mentioned factors, disqualification was not the least severe sanction adequate to serve the purpose of sanctions in this case. Disqualification is a severe sanction, often resulting in a penalty to the parties that is disproportionate to the rule violation. In cases not involving conflicts of interest or breaches of privilege, disqualification should be imposed sparingly. Under the facts of this case as applied to the guidelines set forth in Fisons, disqualification is not required to remedy Eymann and Jones' violation of CR 26(b)(5).
The record in this case does not allow us to determine what other sanctions for the violation in this case would comport with Fisons. "What the sanctions should be and against whom they should be imposed is a question that cannot be fairly answered without further factual inquiry, and that is the trial court's function." Fisons, 122 Wash.2d at 355, 858 P.2d 1054.

CONCLUSION
We find the Petitioners violated CR 26(b)(5) by conducting an ex parte interview with an expert investigator hired by counsel for an opposing party. Additionally, we find the sanction of disqualification of counsel is not required or in accord with the principles set forth in Fisons; therefore, we reverse the trial court's order of disqualification and order reinstatement of counsel. The factual record of this case on appeal does not allow us to determine whether further sanctions are appropriate. On remand, the trial court must fashion an appropriate remedy, consistent with the principles and guidelines set forth by this opinion and Fisons. We remand this case for further proceedings.[6]
DURHAM, C.J., and DOLLIVER and SMITH, JJ., concur.
PEKELIS, J. Pro Tem., concurs in result only.
TALMADGE and MADSEN, JJ., concur by separate opinion.
SANDERS, J., did not participate.
TALMADGE, Justice (concurring).
While I concur in the result of the majority opinion, I write separately to emphasize our strong policy on discovery abuse. The majority opinion does not adequately convey why Norman Buske felt compelled to contact attorneys Richard Eymann and Steve Jones. The factors which compelled Buske to contact Eymann and Jones may be relevant to the trial court's consideration, on remand, of their conduct.
The present case arises from firestorms in Northeastern Washington in October 1991. Over 90 wild fires ignited because of dry weather conditions and high winds. Washington Water Power Company (Water Power), Inland Power & Light Company (Inland Power), and other utilities contacted the law firm of Paine, Hamblen, Coffin, Brooks & Miller (Paine Hamblen) to direct their investigative efforts into the origin of the wild fires. Pursuant to a joint representation agreement, which is not of record, Paine Hamblen organized teams, consisting of at least one lawyer, utility representatives, and consulting experts, to investigate each utility's potential liability for the fires. Buske was one of the consulting experts retained by Paine Hamblen.[1]
Buske was assigned to a team with a Paine Hamblen lawyer and Inland Power employees *420 to investigate fires near Inland Power facilities. On October 17, 1991, Buske's team flew by Inland Power helicopter to investigate an Inland Power line at the most upwind site of one of the fires, known as the Chattaroy fire, which was still burning. After his investigation, Buske determined Inland Power's line was not involved in the Chattaroy fire. However, Buske decided to investigate a nearby Water Power line which was directly over the most upwind spot from which the fire spread. Thinking he was employed by Inland Power, Buske believed an investigation of this line might be relevant to ruling out Inland Power's equipment as the cause of the Chattaroy fire. Buske's observations led him to conclude the Water Power line was the cause of the Chattaroy fire. He documented his findings in notes and took pictures of the Water Power equipment he believed was responsible for the fire.
Buske reported his findings to a Paine Hamblen lawyer who relayed the information by telephone to other unnamed parties. Paine Hamblen instructed Buske to stop looking at the Water Power line and the team left the location before Buske could locate any other physical evidence on the ground under the Water Power line. Nevertheless, Buske returned to the site on two other occasions, October 18, 1991, and November 1, 1991, to confirm his observations. On each occasion, Paine Hamblen ordered Buske to cease investigating before he could locate any physical evidence. However, Buske took pictures and kept notes of his observations on each of these occasions.
On November 1, 1991, Buske noted the defective Water Power equipment had been replaced. When the investigative teams met, Buske presented his evidence relating to the origin of the Chattaroy fire and urged it be given to the Department of Natural Resources, which was investigating the cause of the firestorm fires. Buske's information was never disclosed to the Department. No one asked Buske for his pictures or copies of his notes.
Some two years later, after lawsuits were filed for damages arising out of the 1991 fires, Buske heard press reports in which counsel for the plaintiffs asked for information regarding the origin of the Chattaroy fire. Buske sought out his former Paine Hamblen contact and expressed his belief that he had an ethical obligation to provide the information to counsel for the plaintiffs. Buske was later advised by Paine Hamblen lawyers he could not speak with counsel for the plaintiffs or disclose any of the information he had discovered about the origin of the Chattaroy fire. At this time, Inland Power had not been named as a defendant in the lawsuit by the plaintiffs.
It was only after this direction from counsel for Inland Power and Water Power that Buske sought out counsel for the plaintiffs in order to disclose the information in his possession.

ANALYSIS
The majority is correct in determining Eymann and Jones did not conform their conduct to the requirements of CR 26(b)(5). They interviewed Buske ex parte, without notice to opposing counsel and without court sanction, and reviewed the transcripts of the interviews, and apparently edited them as well. Washington has a strong policy against ex parte contact between counsel and the experts of opposing parties. In Loudon v. Mhyre, 110 Wash.2d 675, 677-78, 756 P.2d 138 (1988), we held ex parte interviews of treating physicians when the plaintiff has not waived the physician-patient privilege are prohibited as a matter of public policy.
Eymann and Jones had the option here of deposing Buske or examining him on the record before a superior court judge rather than taking matters into their own hands and interviewing Buske ex parte. They did not seek an advisory ruling with respect to the ethics of contacting Buske, as did the attorneys at Winston & Cashatt. There is no indication in the record Eymann and Jones could not have immediately sought a ruling from the trial court on Water Power's anticipated claims of privilege, allowing them to depose Buske. Their conduct violated CR 26(b)(5).[2]
*421 However, the trial court's decision to disqualify Eymann and Jones was an excessive sanction. Alternative sanctions were not considered by the trial court,[3] and it is highly likely Buske's evidence would have been discoverable in any event. Additionally, defense counsel waited from October 1993 until July 12, 1994 to file a motion to disqualify counsel. In the meanwhile, counsel for the plaintiffs performed substantial work for the plaintiffs. The delay of defense counsel in seeking to file a motion to disqualify certainly waived any claim they were prejudiced by the actions of Eymann and Jones. Defense counsel had an affirmative obligation to seek a motion to disqualify immediately rather than waiting for a prolonged period of time to act. First Small Business Inv. Co. v. Intercapital Corp., 108 Wash.2d 324, 337, 738 P.2d 263 (1987).
The majority correctly determines the sanction of disqualification was excessive, but does not reference the circumstances which caused Buske to seek out counsel for the plaintiffs. Buske had a real fear the important information in his possession would be suppressed. Paine Hamblen allegedly told Buske his observations and opinions would be sealed. Clerk's Papers at 96-97.
The Buske notes, pictures, and statements as to the origin of the Chattaroy fire appear highly relevant. The plaintiffs may be able to show this material and information would not be available through other means without hardship. As a result, the Buske materials and opinions likely were discoverable under the rules relating to work product and facts and opinions held by nontestifying experts. See CR 26(b)(4), (5); 4 Lewis H. Orland and Karl B. Tegland, Washington Practice: Rules Prac. at 34-35, 40-41 (4th ed. 1992). As Orland and Tegland point out, these rules do not bar discovery where the party seeking discovery could not send its own expert to an accident scene observed by the other party's nontestifying expert prior to physical changes or removal of defective equipment. Id. at 40-41; see Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd., 154 F.R.D. 202 (N.D.Ind.1993) (disallowing discovery sought by plaintiff where cave-in site "swarmed" with plaintiffs' own experts; contrasting situation where plaintiff's expert did not have access to site containing evidence of causation until physical conditions changed).
Washington has a long, clear tradition of condemning gamesmanship in civil discovery. In Gammon v. Clark Equip. Co., 38 Wash. App. 274, 686 P.2d 1102 (1984), aff'd on other grounds, 104 Wash.2d 613, 707 P.2d 685 (1985), then Chief Judge Durham wrote:
The Supreme Court has noted that the aim of the liberal federal discovery rules is to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." United States v. Procter & Gamble Co., 356 U.S. 677, 682, 78 S.Ct. 983, 986-87, 2 L.Ed.2d 1077 (1958). The availability of liberal discovery means that civil trials
no longer need be carried on in the dark. The way is now clear ... for the parties to obtain the fullest possible knowledge of the issues and facts before trial.

Hickman v. Taylor, 329 U.S. 495, 501, 67 S.Ct. 385, 388-89, 91 L.Ed. 451 (1947).
Gammon, 38 Wash.App. at 280, 686 P.2d 1102. In Gammon, the Court of Appeals affirmed sanctions imposed against a party which failed to disclose pertinent information pertaining to the safety record of a certain type of equipment. The court indicated a unilateral decision by a party on the relevance of data within the scope of a discovery request was inappropriate. Gammon, 38 Wash.App. at 281, 686 P.2d 1102. The court *422 held a trial court sanction of $2,500 against the defendant was insufficient, and ordered a new trial, stating:
An award of $2,500 is cheap at twice the price in the context of a $4.5 million wrongful death case. Approval of such a de minimis sanction in a case such as this would plainly undermine the purpose of discovery. Far from insuring that a wrongdoer not profit from his wrong, minimal terms would simply encourage litigants to embrace tactics of evasion and delay. This we cannot do.
Gammon, 38 Wash.App. at 282, 686 P.2d 1102. See also Taylor v. Cessna Aircraft Co., 39 Wash.App. 828, 836, 696 P.2d 28, review denied, 103 Wash.2d 1040 (1985).
In Washington State Physicians Ins. Exchange & Ass'n v. Fisons Corp., 122 Wash.2d 299, 858 P.2d 1054 (1993), we reversed a trial court determination not to impose sanctions for discovery abuse. There, a medical malpractice case had been filed against a doctor and a negligence action against a drug company for injuries to a plaintiff. After the doctor settled the claim of the plaintiff, the attorney for the plaintiff provided to the doctor's lawyer a copy of a letter from an anonymous source indicating the drug company was aware of serious complications involving its drug. The drug company had not disclosed information concerning such complications to the doctor's counsel in the course of discovery. We held sanctions were appropriate because "a spirit of cooperation and forthrightness during the discovery process is necessary for the proper functioning of modern trials." Id. at 342, 858 P.2d 1054. We further noted the conduct of counsel in discovery is measured "against the spirit and purpose of the rules, not against the standard of practice of the local bar." Id. at 345, 858 P.2d 1054. We remanded the case to the trial court for a determination of appropriate sanctions to be imposed. In Fisons, we rejected a hypertechnical reading of the rules, noting the drug company clearly had a responsibility to produce the "smoking gun" evidence in its possession regarding its drug. See also Staggs v. Subaru of Am., Inc. (W.D.Wash. No. C93-5678); Alex Fryer, Dismaying Discovery: Sanctioned Again, Bogle Says It's Taking Steps to Keep the Courts Satisfied, PUGET SOUND BUSINESS JOURNAL, NOV. 17-23, 1995, at 1.
The policy of these cases is plain. Washington courts will not tolerate efforts by counsel to hide behind the letter of discovery rules while ignoring their spirit. The purpose of civil discovery is to disclose to the opposing party all information that is relevant, potentially relevant or reasonably calculated to lead to discovery of admissible evidence in the trial at hand. CR 26(b)(1). Counsel and parties may not unilaterally decide to withhold properly requested information on the ground it is not relevant or admissible. Nor should the courts sit back and wait for an incipient Fisons case to ripen. Where there is an indication a serious potential exists for abuse of civil discovery, the courts are obliged to act. But attorneys in the position of Eymann and Jones must still take their concern about alleged incipient Fisons situations to the courts, rather than taking matters into their own hands.
We do not condone ex parte contact between counsel and expert witnesses of other parties or potential parties to litigation. Eymann and Jones should have brought their concern about Buske's evidence to the trial court, rather than engaging in self-help. But neither should the courts stand by and permit what might be plainly relevant, and potentially extremely significant, evidence to be lost or hidden through intricate investigative plans, and a hypertechnical reading of discovery rules. The purpose of the discovery rules is to ensure trials are fair and the truth is not lost. We must continually affirm these principles, until litigation counsel get the unmistakable message we will apply these principles in discovery and we will sanction lawyers who do not take us at our word.
The end result of this extended controversy over Buske's information has been an inexcusable delay in reaching the merits of the case. The fires which claimed the homes of many of the plaintiffs occurred nearly five years ago. On remand, the trial court should evaluate the conduct of all parties and their counsel, but the trial court should proceed to the merits of this case as expeditiously as possible.
*423 MADSEN, Justice (concurring).
Mr. Buske was part of an extensive investigative group formed when the fires referred to in this case broke out. He was employed to gather and develop information in anticipation of litigation stemming from damage caused by those fires. He took photographs and made observations of the fire scenes. In addition, Mr. Buske was present and participated in meetings where defense counsel discussed ideas, thought processes, and strategies regarding the potential litigation and the investigation.
The petitioners in this case asked Mr. Buske numerous questions about all of these matters. For example, petitioners asked Mr. Buske how the fire investigations were coordinated by the defense team. He was asked about apparent attempts by defense counsel to avoid conflict among the clients and about concerns of counsel regarding development of information harmful to a client. He was asked to disclose discussions at the strategy planning sessions attended by defense attorneys, representatives of their clients, and their consulting experts. He was asked who was present at the planning sessions. He was asked about the relationships of various defense counsel to each other. He was asked about the opinions of other consulting experts who were present at the planning meetings, who the client representatives were at the meetings, and what information the clients were aware of at the meetings. He was asked what the clients were told by their lead counsel at the strategy meetings. He was asked about any admonitions he was given regarding the other fires he investigated. In short, while Mr. Buske was questioned about his own observations, he was also extensively questioned about strategy in investigating the fires in preparation for litigation, and about conversations and instructions of counsel which revealed mental impressions and thought processes.
Thus, as a result of their questioning of Mr. Buske, petitioners obtained opinion work product from him. Moreover, they did so while completely aware that work product protection had been claimed by the utilities. Mr. Buske expressly told petitioners before he was questioned that respondents' counsel had advised him that his information and materials were work product of both Inland Empire and Washington Water Power. Mr. Buske thought, though, that work product protection did not extend to the information he wanted to reveal and that respondents wrongfully sought to suppress that information. Rather than proceed in accord with CR 26, or turn to the trial court and ask for the court's assistance in determining what was discoverable from Mr. Buske, petitioners took it upon themselves to decide that they could engage in ex parte contact with him.
In my view, the trial judge correctly perceived the serious nature of petitioners' ex parte contact with Mr. Buske. The trial judge said:
If you read through [Mr. Buske's] statement, those facts [those available to counsel], or at least what I perceive to be the facts, take up really very little of the statement... and I'm talking now about the Sunday statements and its various forms, the edited and nonedited version, talks about Mr. Buske's concerns, about his reasons for coming forward, talks about the rather interesting investigation strategies which were done there. It talks about what counsel were doing during the process of the investigation of various fires. Factually there is only a small part of those statements which would be the independent observations ... which would be relevant and material for the plaintiffs to know in evaluating the liability issues.
Counsel's Oral Argument on Def.'s Mot. For Disqualification of Counsel and Ct.'s Oral Decision (Court's Oral Decision) at 91-92. The court also said:
The concern here in this particular case is not those pieces of factual information, frankly, that Mr. Buske provided with regard to what his perception of the origin of that particular fire and that particular place. Arguably those at some point may have been discoverable.
The serious issue is all of the other examination that was done of him which talked about essentially the strategies counsel were using to investigate the fires, the conversations between Mr. Buske and counseland when I say, "counsel," I'm *424 talking about Mr. Stone and Mr. Kulisch which were related primarily to Mr. Eymannand whatever conversations Mr. Buske may have had with Mr. Eymann and/or Mr. Jones which were not recorded and are not part of the record. That is a serious issue....
Court's Oral Decision at 95. From the judge's oral comments, including those quoted above, it is apparent that the trial judge concluded that Mr. Buske's information constituted work product, that much of the information is not discoverable, and that all of the information was improperly obtained by petitioners in their questioning of Mr. Buske in violation of CR 26. The rule, the case law, and the record bear out these conclusions.
Because the majority misreads CR 26 and misinterprets the work product rule, the majority erroneously concludes that material provided by Mr. Buske is not protected under the work product doctrine. The majority's mistaken view of CR 26, the work product rule, and the record in this case has also led it to the incorrect conclusion that petitioners' ex parte contact with respondents' expert was somehow justified because of a perceived need to act quickly to preserve factual information. As a result of these errors, the majority opinion implies that the violation of the discovery rules in this case is not a serious one, and suggests to the trial court on remand that a serious sanction is not warranted.
The majority's analysis of CR 26 and the work product rule will have significant consequences in future cases, as well as significant impact when the action underlying this matter proceeds to trial. Because I believe the majority fails to adequately address the serious violation of the discovery rules and the principles upon which litigation proceeds in our adversary system, I cannot sign the majority opinion.

WORK PRODUCT RULE AND CR 26(b)(4) AND (b)(5)
As an introductory matter, the work product rule in CR 26(b)(4) is the same as that in Fed.R.Civ.P. 26(b)(3), and this court has previously looked to cases applying the federal rule for guidance in construing the state rule. See, e.g., Heidebrink v. Moriwaki, 104 Wash.2d 392, 706 P.2d 212 (1985); Pappas v. Holloway, 114 Wash.2d 198, 210-11, 787 P.2d 30 (1990). Accordingly, I will refer to cases and secondary authority regarding the federal rule, as well as that regarding CR 26, in explaining my disagreement with the majority.[1]

I
My disagreement with the majority begins with its premise that if CR 26(b)(5) (discovery of facts and opinions of experts) applies to the information in this case, then CR 26(b)(4) (discovery of work product) does not. Because the majority fails to understand the interplay between these two rules, it erroneously concludes that nearly all of Buske's evidence falls outside the protection of the work product rule.
Contrary to the majority view, the rule's provision that the conditions of CR 26(b)(4) are "[s]ubject to the provisions" of CR 26(b)(5) should not be read to mean that where an expert is involved, subsection (b)(4) does not apply. Neither the plain meaning of the term "subject to" nor well-reasoned cases accept the majority's view of CR 26(b)(4) and (b)(5) as "either/or" propositions. "Subject to" means in the context of the rule "governed or affected by." Black's Law Dictionary 1425 (6th ed. 1990) (other definitions listed do not fit the context of the rule, i.e., "[l]iable, subordinate, subservient, inferior, obedient to; ... provided that; provided; answerable for"). Thus, the rule does not *425 say that if subsection (b)(5), concerning experts, applies, subsection (b)(4) cannot apply as well; instead the rule indicates that provisions in CR 26(b)(5) which are different from those in CR 26(b)(4) hold sway over CR 26(b)(4).
Where discovery from experts is sought, the work product rule of CR 26(b)(4) is "subject to" the provisions of CR 26(b)(5). This language reflects the rejection by the federal rule of the principle that expert information is by definition always work product. See 4 James W. Moore, Federal Practice § 26.01[18], at 26-41 (2d ed. 1995) (quoting Advisory Committee Note of 1970 to Amended Rule 26(b)). It does not, however, follow that a party's expert never possesses information which may be protected under the work product doctrine.
A number of courts have recognized the interplay between the work product provision of Fed.R.Civ.P. 26(b)(3) and the provision governing discovery from experts involved in trial preparation, former Fed.R.Civ.P. 26(b)(4). E.g., Bogosian v. Gulf Oil Corp., 738 F.2d 587 (3d Cir.1984); Haworth, Inc. v. Herman Miller, Inc., 162 F.R.D. 289 (W.D.Mich.1995)[2]; Dominguez v. Syntex Lab., Inc., 149 F.R.D. 158, (S.D.Ind.1993); North Carolina Elec. Membership Corp. v. Carolina Power & Light Co., 108 F.R.D. 283 (M.D.N.C.1985). The court in Bogosian explained:
The first paragraph of Rule 26(b)(3) consists of two sentences.... the first sentence requires a showing of "substantial need" before work product must be produced. The second sentence requires protection against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party. The proviso introduces the first sentence of Rule 26(b)(3) ("Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents ... prepared in anticipation of litigation or for trial ...") and signifies that trial preparation material prepared by an expert is also subject to discovery, but only under the special requirements pertaining to expert discovery set forth in Rule 26(b)(4). The proviso does not limit the second sentence of Rule 26(b)(3) restricting disclosure of work product containing "mental impressions" and "legal theories". Thus, it does not support the ... conclusion that Rule 26(b)(3), protecting this category of attorney's work product, "must give way" to Rule 26(b)(4), authorizing discovery relating to expert witnesses.
Bogosian, 738 F.2d at 594. See also Haworth, 162 F.R.D. at 293 (the drafters of the federal rule "intended the terms `subject to' to mean that subdivision (b)(3) applies unless there is a standard to the contrary in subdivision (b)(4)" and "there appears to be no differing standard for discovery of opinion work product").
I believe these cases provide sound guidance for applying CR 26 and recognizing that CR 26(b)(4) and (b)(5) should both be considered where work product is claimed and discovery from an expert is sought. Accordingly, I disagree with the majority's conclusion that if CR 26(b)(5) applies, CR 26(b)(4) and the work product rule do not.

II
Next, I disagree with the majority when it states that factual material does not come within the protection of the work product rule. Majority at 417-418. There are two types of attorney work product generally recognized, and CR 26(b)(4) addresses both.[3] The first sentence of the rule describes materials obtained or developed in anticipation of *426 litigation; the rule specifically refers to documents and tangible things. The second sentence refers to what is often termed "core" or "opinion" work product, i.e., work product containing those "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." CR 26(b)(4); see Pappas, 114 Wash.2d at 210-11, 787 P.2d 30; Lewis H. Orland, Observations on the Work Product Rule, 29 Gonz.L.Rev. 281, 282-83 (1993-1994). Thus, the rule concerns both ordinary factual work product and opinion work product. The majority concludes, though, that the only kind of work product is "opinion work product," and that factual material does not come within the work product rule. Majority at 417-418. This conclusion completely misapprehends CR 26(b)(4) and the work product rule. CR 26(b)(4) does not even suggest that work product does not include factual material. The rule broadly encompasses material prepared in anticipation of litigation.
One of the authors of the treatise cited by the majority at 18 (4 Lewis H. Orland & Karl B. Teglund, Washington Practice, Rules Practice (4th ed. 1992) clearly explains in a recent article that under the rule's work product provision "factual documents prepared in anticipation of litigation that do not contain or reflect an attorney's or other representative's mental impressions, conclusions, opinions, or legal theories are discoverable upon" the "substantial need" showing of the work product provision. Orland, Observations, supra at 291 (emphasis added). In Hickman v. Taylor, 329 U.S. 495, 511, 67 S.Ct. 385, 393-94, 91 L.Ed. 451 (1947), upon which both Fed.R.Civ.P. 26(b)(3) and CR 26(b)(4) rest, the Court noted that relevant and nonprivileged facts hidden in an attorney's file may be discovered if production is "essential to the preparation of one's case."
Thus, under CR 26(b)(4), material concerning factual information prepared in anticipation of litigation by a party or that party's representative, including counsel, a consultant, or an agent, may be ordinary work product which is discoverable only where the showing is made that there is substantial need of the materials in the preparation of the case, and that the substantial equivalent of the materials cannot be otherwise obtained without undue hardship. Where such material is sought through discovery, the determination of whether the substantial need showing has been made is vested within the sound discretion of the trial judge, who makes that determination after considering all the facts and circumstances of the individual case. Heidebrink, 104 Wash.2d at 401, 706 P.2d 212. To justify disclosure, the "party must show the importance of the information to the preparation of his case and the difficulty the party will face in obtaining substantially equivalent information from other sources if production is denied." Id. at 401, 706 P.2d 212.
The majority's belief that factual material does not fall within the work product rule seems to arise in part from a misunderstanding of the principle that factual material embodied in a protected document may be discoverable. Although discoverable facts remain discoverable even if embodied in a protected document under CR 26(b)(4), this does not mean that all factual material is always discoverable. Nor does the mere circumstance that facts may be discoverable lead to the conclusion that factual information is never work product; factual work product may be discoverable under the "substantial need showing" requirement of CR 26(b)(4).

III
CR 26(b)(5) states that what may be discovered from an expert generally depends upon whether the expert is expected to testify or not. If the expert is expected to testify, then under CR 26(b)(5)(A)(i) discovery of the substance of the facts and opinions to which the expert will testify and a summary of the grounds for the opinions is discoverable through interrogatories.
If the expert is not expected to testify (sometimes called a consulting expert), then CR 26(b)(5)(B) provides that facts known to or opinions of the expert are discoverable only as provided in CR 35(b) (which is not relevant here) or "upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to *427 obtain facts or opinions on the same subject by other means." Thus, as is the case for work product under CR 26(b)(4), CR 26(b)(5) requires a high showing of need for information before discovery of a nontestifying expert's facts and opinions obtained and developed in anticipation of litigation is allowed. CR 26(b)(5)(B), like CR 26(b)(4), recognizes "that a trial is still an adversary proceeding and that, so conceived, fundamental fairness requires that `discovery' not be utilized to defeat a litigant by probing for real or apparent weaknesses in his case which may have been revealed in his trial preparation." Crenna v. Ford Motor Co., 12 Wash.App. 824, 831, 532 P.2d 290 (discussing provision for discovery from nontestifying experts, then numbered CR 26(b)(4)(B)), review denied, 85 Wash.2d 1011 (1975). The former federal rule comparable to CR 26(b)(5) has also been recognized as serving the purpose of guarding against the danger that one party will unfairly use another party's expert to prepare his or her own case, as well as the purpose of facilitating the presentation and clarification of issues at trial. Vasquez v. Markin, 46 Wash.App. 480, 492 n. 5, 731 P.2d 510 (1986) (quoting Thomas R. Trenkner, Annot., Pretrial Discovery of Facts Known and Opinions Held by Opponent's Experts Under Rule 26(b)(4) of Federal Rules of Civil Procedure, 33 A.L.R.Fed. 403, 414 (1977)), review denied, 108 Wash.2d 1021 (1987).
Where opinion work product is concerned, however, the federal courts cited above have held that the information is protected under the work product doctrine even where discovery is sought from an expert who is expected to testify. Similarly, this court should recognize that discovery of opinion work product from an expert is generally foreclosed. See, e.g., Bogosian (applying federal rule); Haworth (same). In this case, the bulk of the information disclosed by Mr. Buske falls within this category, as the trial judge recognized.
Opinion work product receives greater protection than ordinary work product. CR 26(b)(4) says only that "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." While the provision does not directly identify what protection is afforded opinion work product, the question has been the subject of a great deal of attention. The United States Supreme Court has described opinion work product "entitled to special protection," and said that such work product "cannot be disclosed simply" on a substantial need showing. Upjohn Co. v. United States, 449 U.S. 383, 401, 101 S.Ct. 677, 688, 66 L.Ed.2d 584 (1981).
This court addressed the required showing for opinion work product in Pappas. As the court noted there, the two prevailing views are that such work product is either absolutely immune from discovery, or that an exceptional showing of need for the information is required, a standard which is higher than the "substantial need" standard applicable to ordinary work product. The court noted the disagreement among other jurisdictions, and adopted what it termed a "middle ground," i.e., "where the material sought to be discovered is central to a party's claim or defense, an exception to the strict rule created by CR 26(b)[4] should apply and discovery should be allowed." Pappas, 114 Wash.2d at 212, 787 P.2d 30. Thus, while the court rejected a higher standard for showing necessity of such work product and rejected absolute protection for such work product in every instance, it substantially restricted the discoverability of such work product depending upon whether the information is central to the case. Pappas involved a claim of attorney malpractice, and opinion work product was central to that claim. In practical effect, the holding in Pappas means that opinion work product will rarely be discoverable.[4]
*428 Accordingly, discovery of opinion work product from an expert should rarely be permitted, and not in this case.

IV
Because the majority erroneously concludes that Mr. Buske's evidence is simply factual in nature and, thus, not work product, it fails to address another important issue concerning the work product rule which is debated by the parties in this matter. CR 26(b)(4) specifically refers to discovery of documents and tangible things, and petitioners claim that intangibles, such as Buske's observations and discussions with others concerning defense of this case, are not covered by the work product rule. Leading federal commentators disagree, concluding that intangibles are also protected by the work product doctrine under Hickman:
Rule 26(b)(3) itself [like CR 26(b)(4)] provides protection only for documents and tangible things and ... does not bar discovery of facts a party may have learned from documents that are not themselves discoverable. Nonetheless, Hickman v. Taylor continues to furnish protection for work product within its definition that is not embodied in tangible form, such as the attorney's recollection, in Hickman v. Taylor, of what the witnesses told him. Indeed, since intangible work product includes thoughts and recollections of counsel, it is often eligible for the special protection accorded opinion work product.
8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2024, at 337-38 (2d ed. 1994); see also 4 James W. Moore, Federal Practice, ¶ 26.15[1], at 26-291 to 294 (2d ed. 1995). Professor Orland also notes that some courts have given protection to intangible work product under the basic policies of Hickman. Lewis H. Orland, Observations on the Work Product Rule, 29 Gonz.L.Rev. 281, 284 (1993-1994). This court has recognized the key role of Hickman where work product is at issue. E.g., Pappas; Heidebrink.
The Hickman protection of intangible work product is of primary importance in this case. "Subject matter that relates to the preparation, strategy, and appraisal of the strengths and weaknesses of an action, or to the activities of the attorneys involved, rather than to the underlying evidence, is protected regardless of the discovery method employed." James W. Moore, Federal Practice, ¶ 26.15[1], at 26-293 (2d ed. 1995) (emphasis added). Two cases described in the treatise, at 26-293 to 26-294, serve as examples. In Bercow v. Kidder, Peabody & Co., 39 F.R.D. 357 (S.D.N.Y.1965), the court sustained defendant's refusal to answer questions representing an indirect attempt to determine the manner in which the other party was preparing for trial. The questions included inquiries about what preparation defendant had made for the deposition examination, who defendant had talked to about the deposition in preparing for it, and what documents defendant had looked at in preparing for the deposition. In Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir.1986), plaintiff's attempt to depose defendant's in-house counsel as to whether defendant was in possession of certain documents was barred because in light of the large numbers of documents available, the knowledge of the attorney as to certain documents would reveal the attorney's strategy and judgment as to what was important in the case. See also, e.g., Haworth, 162 F.R.D. at 295;[5]Lott v. Seaboard Systems R.R., Inc., 109 F.R.D. 554 (S.D.Ga.1985); Ford v. Philips Elec. Instruments Co., 82 F.R.D. 359 (E.D.Pa.1979); Transmirra Prods. Corp. v. Monsanto Chem. Co., 26 F.R.D. 572, 579 (S.D.N.Y.1960) (there should be no difference between an exchange of written legal memoranda among attorneys and one of ideas and opinions developed through consultations or conferencing); Special Project, The Work Product Doctrine, 68 Cornell L.Rev. 760, 841 (1983).
Thus, intangible factual information concerning strategy in preparing to defend an anticipated action falls within the kind of *429 intangible work product protected under Hickman as described by the commentators and a number of courts, constitutes opinion work product which is rarely discoverable under Pappas, and is generally undiscoverable from a party's expert.
The majority opinion directly contravenes these principles when it says that all factual information is unprotected by the work product rule and that strategy and conversations in preparing for anticipated litigation are unprotected.

V
The majority also errs when it concludes that because there was no litigation actually pending at the time Mr. Buske worked on the investigation, he could not have had access to "privileged"[6] information. Majority at 416-417. The work product rule protects material obtained or developed in anticipation of litigation. The circumstances in the seminal case in this area, Hickman, are analogous to the facts in this case. There work product protection was applied to information gathered by defendant's counsel immediately after a tug sank with loss of lives but well before litigation commenced. Here, the investigation of the fires occurred after they broke out, but well in advance of litigation.
This court has also recognized that information may be protected by the work product rule in advance of litigation, and accordingly in advance of a defendant being named party to a lawsuit, during litigation, and after litigation has terminated. Heidebrink, 104 Wash.2d at 400, 706 P.2d 212; Pappas, 114 Wash.2d at 210, 787 P.2d 30; Dawson v. Daly, 120 Wash.2d 782, 790, 845 P.2d 995 (1993); accord, e.g., Martin v. Monfort, Inc., 150 F.R.D. 172, 173 (D.Colo.1993) ("[t]here is no requirement that litigation have actually commenced in order to assert work product"); D'Amico v. Cox Creek Ref. Co., 126 F.R.D. 501, 506 (D.Md.1989) ("not necessary that suit has been filed, so long as litigation is a reasonable contingency"); see also F.T.C. v. Grolier, Inc., 462 U.S. 19, 25, 103 S.Ct. 2209, 2213, 76 L.Ed.2d 387 (1983).
(Rule 26(b)(3) does not in so many words address the temporal scope of the work-product immunity, and a review of the Advisory Committee's comments reveals no express concern for that issue. Notes of Advisory Committee on 1970 Amendments, 28 U.S.C.App., pp. 441-442. But the literal language of the Rule protects materials prepared for any litigation or trial as long as they were prepared by or for a party to the subsequent litigation. See 8 J. Wright & A. Miller, Federal Practice and Procedure § 2024, 201 (1970).
(dicta). "Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced." 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2024, at 343 (2d ed. 1994).
It is clear that the utilities in this case, through their attorneys, Paine-Hamblen, were anticipating the fallout from the Chattaroy fires and hired Mr. Buske, among others, in an effort to prepare for litigation.

VI
Petitioners also claim they violated no rule because CR 26(b)(4) and (b)(5) do not apply to Mr. Buske. This is so, they argue, because Buske was Inland Power's expert and Inland Power was not a party to the litigation when the ex parte contact with Mr. Buske occurred. The majority concludes that it is unnecessary to resolve the question of Mr. Buske's status. The majority also says, at 6 and 13, that the trial judge made no finding as to Mr. Buske's status. I disagree.
Contrary to the majority's statement, Buske's status must be determined as a *430 threshold matter in order to decide whether CR 26(b)(4) and (b)(5) apply at all. Moreover, the trial judge did address Mr. Buske's status and found that he was not solely Inland Power's expert. She said "[t]hat issue, I believe it is fair to say, may still be somewhat murky. But I'm satisfied after looking at all of the evidence it's clear he was hired as a part of some type of effort involving more than one utility." Court's Oral Decision at 92. She also said that Mr. Buske communicated enough to petitioners to put them on notice that the court needed to resolve the question of Mr. Buske's status.
The trial court's finding that Mr. Buske was part of an investigation on behalf of more than one utility, i.e., more than just on Inland Power's behalf, is sound. He was hired by Paine-Hamblen as a consultant to investigate the origin of the fires, along with other consultants all working on behalf several client utilities simultaneously investigating the fires. He attended numerous meetings, at least one of which was at Washington Water Power offices, which were attended by counsel, utilities' representatives and other expert consultants. At the strategy planning sessions, he participated in the discussions conducted among those present. In short, he was part of a team working for Paine-Hamblen on behalf of several clients including Inland Power and Washington Water Power.
Nor was Mr. Buske's status unknown to petitioners. Although at some points he indicated to them that he investigated on behalf of Inland Power, he also sufficiently informed them of the joint investigation effort, and his own doubts about who his client was, to put them, at the very least, on notice that there might be a question about his status. Even more, prior to their questioning him he expressly told them that respondents' counsel had advised him that his information and materials were work product of both Inland Power and Washington Water Power. Under these circumstances, petitioners could not interview Mr. Buske without resorting to the court for clarification of his status or complying with CR 26.

APPLICATION OF CR 26 AND WORK PRODUCT RULE
Having explained my fundamental disagreement with the majority's brief but erroneous analysis of CR 26 and the work product rule, I turn to application of the legal principles discussed above to this matter. In her conclusions, the trial judge said that factual information concerning the origins of the fire is arguably discoverable. The judge also said that had discovery proceeded in accord with the rules, a judge "could have fashioned an Order which restricted information or questions of Mr. Buske or information he was to provide to a very, very narrow limited area where he had some facts which were available to counsel." Court's Oral Decision at 91.
If Mr. Buske is expected to testify, his factual observations and professional opinions as to the origin of the fire will be discoverable under CR 26(b)(5)(A)(i). If he is a nontestifying expert, it is still possible, as the trial judge said, that factual information about Mr. Buske's observations will be discoverable, under CR 26(b)(5)(B) and the "exceptional circumstances" standard, during proper discovery in this case. However, it must be noted that on this record we do not even know whether Mr. Buske is the only possible source of first hand observations of the fire scene.
Other information in the hands of Mr. Buske includes photographs and related notes which he acquired and developed in anticipation of litigation. This type of material is often discoverable because the substantial equivalent cannot later be obtained. 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2024, at 367 (2d ed. 1994). Again, the record does not provide sufficient information to make this determination.
In order to secure Mr. Buske's professional opinions if he is a nontestifying expert, plaintiffs will also have to make the requisite showing of need for his opinions as to the cause of the fire as well as for his factual observations. See CR 26(b)(5)(B). It may be that based upon discoverable, objective facts, plaintiffs will be able to secure expert conclusions through their own experts rather *431 than through their opponents' nontestifying expert. See Walsh v. Reynolds Metals Co., 15 F.R.D. 376 (D.N.J.1954).
However, whatever discovery from Mr. Buske will ultimately be approved under CR 26, it must be emphasized that on the present record it is unknown whether Mr. Buske will be a nontestifying expert or a testifying expert and accordingly the extent to which facts known by him and his professional opinions concerning the fires will be ultimately discoverable under CR 26(b)(5). The ex parte contact occurred before respondents' counsel knew who had been named as defendants in the suit, and thus well before any determination about whether Mr. Buske would be expected to testify. Nonetheless, while it is unclear what discovery will eventually prove appropriate under CR 26(b)(5), it is clear that given the timing of the ex parte contact any attempt to justify, under CR 26(b)(5)(A)(i), the obtaining of information from Mr. Buske on the basis he was expected to testify must be rejected because any such discovery would have been premature. See In re Shell Oil Refinery, 132 F.R.D. 437, 440 (E.D.La.), opinion clarified, 134 F.R.D. 148 (E.D.La.1990).
It also must be emphasized that whatever discovery is ultimately approved, petitioners' ex parte contact occurred without any showing whatsoever of exceptional need under CR 26(b)(5)(B), and thus there was no compliance with that provision. Petitioners obtained both factual information about Mr. Buske's observations and his photographs, as well as his professional information as to the origin of the Chattaroy fire. Indeed, since Mr. Buske selected only some of his photographs, those illustrating and supporting his opinions, even the photographs were revealing as to his professional opinion.
Finally, as to discovery of factual information, the parties have disputed whether Mr. Buske is, at least in some degree, a fact or occurrence witness whose information is readily discoverable without regard to CR 26(b)(4) or (5). He is not. Whether a person who happens to be an expert is a fact or occurrence witness whose information is freely discoverable depends upon whether the facts and opinions were obtained for the specific purpose of preparing for litigation. If not, CR 26(b)(5) does not apply. Conversely, if obtained in preparation for potential litigation, the professional's factual information is not that of a fact or occurrence witness, and the discovery provisions of CR 26(b)(4) and (5) must be complied with. See Baird v. Larson, 59 Wash.App. 715, 720, 801 P.2d 247 (1990) ("[p]rofessionals who have acquired or developed facts and opinions not in anticipation of litigation but from involvement as an actor in a transaction" are not experts within the meaning of CR 26); Peters v. Ballard, 58 Wash.App. 921, 927, 795 P.2d 1158 (whether a person who happens to be an expert is an expert witness or a fact witness depends upon whether facts and opinions obtained for the specific purpose of preparing for litigation), review denied, 115 Wash.2d 1032, 803 P.2d 325 (1990); see also 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2033, at 457 (2d ed. 1994) (where information is acquired or developed in anticipation of litigation, ordinarily at the instance of counsel, it is discoverable from an expert only pursuant to Fed.R.Civ.P. 26(B)(4); if not, it is discoverable as with any other nonexpert witness); 4 Lewis H. Orland & Karl B. Tegland, Washington Practice, Rules Practice, at 40 (4th ed. 1992) (if the circumstances were perceived by the expert as an actor or observer, discovery is from a "fact" witness and not an expert, but if circumstances perceived in anticipation of litigation, CR 26(b) protection applies).
Mr. Buske was part of an investigation team hired by counsel for respondents and assembled to investigate the fires in anticipation of litigation, and he acquired his information in that capacity. Accordingly, if in the end he is a nontestifying expert, discovery of the factual information pertaining to his personal observations requires the requisite showing of need under CR 26(b)(5), i.e., that exceptional circumstances exist under which it is impracticable for plaintiffs to obtain facts on the same subject by other means.
The trial judge also concluded that much of the information obtained from Mr. Buske involved nondiscoverable opinion work product, *432 because she noted that "[a]s the rule indicates, the plaintiff is not entitled to trial strategies, the thought processes, the work product of counsel themselves in the course of asking [for] this information." Court's Oral Decision at 90. She said the serious issue is the examination of Mr. Buske about the strategy for investigating the fires and the conversations between Mr. Buske and counsel for the utilities.
The record supports the trial judge's conclusion that opinion work product was improperly obtained by petitioners in their questioning of Mr. Buske. Even if plaintiffs are ultimately entitled to discovery of facts and professional opinions of Mr. Buske concerning the origin of the fire, they are not entitled to opinion work product concerning the strategy in investigating the fires in anticipation of litigation or the conversations of counsel relating to preparation for litigation.

SANCTIONS
Because the trial judge found a serious violation of CR 26 in this case, she imposed the sanction of disqualification of petitioners as plaintiffs' counsel.
I agree with the majority that the analysis in Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 858 P.2d 1054 (1993) is generally applicable as to sanctions outside the context in that case, i.e., sanctions imposed under CR 26(g). Further, the appropriate sanction for a violation of the discovery rules lies in the sound discretion of the trial judge, and the standard of review is the abuse of discretion standard. Id., at 338-39, 858 P.2d 1054. "A trial court abuses its discretion when its order is manifestly unreasonable or based on untenable grounds." Id., at 339, 858 P.2d 1054. The sanctions here were imposed under the inherent power of the trial court.
In my view the trial judge abused her discretion in imposing the sanction of disqualification, and thus remand is necessary because on this record it cannot be determined whether the trial judge considered the factors in Fisons and imposed the least sanction which would serve the purposes of sanctions. The uncertainty is shown in part, for example, because the trial judge disqualified petitioners but did not disqualify the firm of Winston Cashatt, whose attorneys were also in possession of Mr. Buske's statement.
However, while I agree with the majority that remand is necessary, I disagree with the majority that disqualification is not warranted because no work product was improperly obtained because, as explained above, plaintiffs did wrongly acquire information protected under the work product doctrine. On the other hand, it also seems that if the trial judge thought disqualification was warranted on the grounds that the statement disclosed work product which would taint further proceedings because of counsel's knowledge of that work product, then Winston Cashatt would have been disqualified as well.[7] In light of the uncertainty about application of the Fisons analysis, remand for redetermination of sanctions is necessary.
However, as to the Fisons considerations, I strongly disagree with the majority's apparent tolerance of petitioners' conduct in light of Mr. Buske's good intentions when faced with an "ethical dilemma" and, as the majority puts it, petitioners' duty to act quickly in the face of possible loss of factual information. Regardless of Mr. Buske's sense of the utilities' investigation, his fears about the impending litigation and discovery proceedings, and even his wish to do the right thing, the fact is that the burden of compliance with the rules of discovery is on the attorneys, not on Mr. Buske, who is not *433 expected to understand the work product rule or to proceed to court to find out how it applies in a given case. Whether Mr. Buske intended that discovery rules be violated or not is irrelevant.
Moreover, the record simply does not support the conclusion that any factual matter which might be discoverable was in any real danger of being lost to plaintiffs. Mr. Buske still had all of his materials, and no request by respondents had been made for them. He had been advised he could not disclose them because they were work product, and petitioners clearly knew he had been so advised because he told them so.
Further, if petitioners had fears that discoverable factual information would be lost, they could have appeared in court first thing Monday morning, October 18, 1993, rather than take an extensive and far-ranging statement from him just one day earlier, Sunday, October 17, 1993. As the trial judge said with regard to the claim that an emergency situation existed requiring petitioners to act quickly: "The material could be destroyed. Clearly if that's the case, counsel has the duty to act. But how do they act? It was clear Mr. Buske was still in possession of his material, his notes, and his pictures. Again, counsel could have come to court on Monday morning" and asked the court for help in preserving the material. Court's Oral Decision at 93. The court added: "Again, that would be a reasonably simple process to do. It puts everything out on the table for the Court, then to make a rational, well-informed decision about what appropriate disclosure is." Court's Oral Decision at 93.
The majority also makes too light of petitioners' conduct by noting that Mr. Buske's statement was promptly made available to respondents' counsel the day after it was made. Whether a day later or a year, the damage was already done and the rules already violated. Moreover, it was not petitioners who gave the statement to respondents' counsel; it was Mr. Buske.
Finally, respondents' delay, if any, in filing the motion for disqualification is a matter for consideration by the trial court on remand, but contrary to the majority's representations, the record indicates that at least some of the period of time which passed between the ex parte contact and the motion to disqualify was due to attempts to resolve matters without recourse to a motion to disqualify. The trial court should, on remand, consider all of the circumstances surrounding the alleged delay. If respondents did, in fact, unjustifiably delay in filing the motion for disqualification, that is a factor the trial court must consider in determining appropriate sanctions.
It is crucial in this matter to keep in mind that the underlying suit had been filed just days before Mr. Buske was improperly interviewed. We will never know whether Mr. Buske's fears would have had any basis in fact. Mr. Buske himself told petitioners that defense counsel had advised him that he could not disclose his information because it was work product. The record indicates that Mr. Buske misunderstood the work product doctrine. But regardless of what Mr. Buske thought, it was incumbent upon petitioners to turn to the court if preservation of materials was thought necessary, and to refrain from setting themselves up as the arbiters of what was discoverable.
Moreover, while Mr. Buske obviously, and I believe sincerely, thought he had information establishing the cause of the Chattaroy fire, it is premature to draw any conclusions about the merits of the underlying action, particularly based solely on the limited information in this record, all attributable to Mr. Buske. The trier of fact has yet to decide, after hearing, no doubt, from experts representing both sides of the litigation.
I also must comment on the majority's implication, drawn from Mr. Buske's statement, that information about the fires had not been forwarded to the Department of Natural Resources as it should have been. Majority at 418 n. 5. This record does not conclusively establish what DNR knew or whether information gathered by Mr. Buske or others was forwarded or not. As an appellate court reviewing this matter the majority does a disservice, and far exceeds its appellate role, by accepting at this early stage what are basically one man's allegations *434 as to the truth and by acting as a fact-finder on incomplete evidence.
Finally, I briefly comment on petitioners' allegations that respondents are engaged in a cover-up involving impropriety in the investigation of the fires and a cover-up designed to hide the origin of the Chattaroy fire. First, this record is simply too limited to draw any valid conclusions based upon such allegations. The only source for the speculation is Mr. Buske, who, though apparently well-meaning, is just one person necessarily basing his opinion on limited information. Second, the allegations are not central to the matter before us, i.e., the propriety of petitioners' conduct. If impropriety on respondents' part has occurred, it should not, of course, be countenanced. That goes without saying. But the discovery rules are designed to allow discovery of factual information about the cause of the fires if plaintiffs are unable to obtain that information elsewhere. With that information, whether obtained through discovery from Mr. Buske or obtained independently of him, the truth or falsity of petitioners' allegations about impropriety in investigation of the fires could be pursued. Regardless of the outcome of that inquiry, it is inappropriate for petitioners to rely on allegations about misconduct on the part of respondents to excuse petitioners' own serious violation of the discovery rules.
Also, as to the allegation of a cover-up designed to hide evidence concerning the origin of the fires, if respondents ever had an eye toward disregarding their obligations under the discovery rules, they are advised to review our recent decision in Fisons, where we signaled that we will simply not tolerate discovery abuse. However, this court should not assume future impropriety. It is plain that because of petitioners' interference with the proper course of discovery we will never know what respondents and respondents' counsel would have done. Aside from Mr. Buske's apparent misunderstanding of the work product rule and respondents' claim of work product protection, there is no basis in this record to conclude that respondents would have ignored their obligations under CR 26.
The majority's erroneous characterization of the information at issue in this case will doubtless affect the trial by making it impossible for defendants to rely on any work product protection or other protection afforded under CR 26. Further, the majority's characterization of the disclosed information will be binding when the trial court determines sanctions on remand, thus lending to the danger that insufficient sanctions will be imposed.
In my view the trial judge should have the freedom to determine the sanctions which befit the serious nature of the violation here, while remaining true to the principles underlying CR 26(b)(5), the work product rule, and our adversary system. Thus, among other things, the trial court should be free to provide protection for trial purposes of information and materials wrongfully obtained by petitioners which proves to be undiscoverable, either because it is nondiscoverable work product, or because it consists of facts or opinions or both which are undiscoverable under CR 26(b)(5)(B). Specific rulings on the information and materials must await proper discovery proceedings and the determination whether Mr. Buske is expected to testify.
The majority so mischaracterizes the work product doctrine and application of CR 26 that its opinion is bound to cause mischief in future cases, as well as in this case. Therefore, I cannot join in the majority's analysis.
I concur only in the result reached by the majority.
ALEXANDER, J., concurs.
NOTES
[1] These utilities included Washington Water Power Company (Washington Water Power) and Inland Power & Light Company (Inland Power).
[2] No express ethical prohibition prohibits ex parte contact with an expert witness of an opposing party. ABA Comm. on Ethics and Professional Responsibility, Formal Op. 378 (1993); Terry E. Nilles, Ex Parte Contacts with Expert Witnesses, Wisconsin Lawyer, Dec., at 18 (1994). The ABA opinion finds that Model Rule 3.4(c) (knowingly violating an obligation of a tribunal) may be violated by ex parte contact with an expert witness if the jurisdiction has a discovery rule based on Fed.R.Civ.P. 26(b)(4)(A). ABA Formal Op. 378.
[3] Fed.R.Civ.P. 26(b)(4) is substantially similar to Washington's CR 26(b)(5), however; the text of the rule is different.
[4] Inland Power was added as a Defendant in the Chattaroy fire lawsuit sometime after the Buske interview, because of information gained from other sources.
[5] Upon originally making his discoveries, at the time of the fires in 1991, the record reflects Buske said he urged the disclosure of his findings to the Department of Natural Resources (the state agency charged with investigating the fires). Evidently, no disclosure was made. Additionally, Buske also felt a duty based on his belief that he was an expert for Inland Power because some of the Plaintiffs and victims of the Chattaroy fire were Inland Power customers. The facts discovered by Buske implicated Washington Water Power; therefore, Buske felt that both he and Inland Power had a duty to disclose these facts to their customers.
[6] Because this decision effectively restarts this case, Respondents' motion to proceed with trial court and appellate court actions is denied.
[1] The trial court did not make findings of fact on the conduct or intentions of the parties, and, in particular, Buske's allegations about Paine Hamblen. For purposes of this opinion only, I assume Buske's allegations about Paine Hamblen are true.
[2] This is not a traditional case of counsel contacting the opposing party's experts. Paine Hamblen did not make clear to Buske the party for whom Buske was a consulting witness. The dual or multiple representation of the utilities and meetings of the investigative teams also may have created circumstances in which Buske's opinions and findings would be revealed to parties other than the one employing Buske. On this inadequate record and without the terms of Paine Hamblen's joint representation agreement before us, it is not possible to conclude whether confidentiality was preserved or lost. However, it was clear enough to Eymann and Jones the utilities would claim Buske was a defense expert and his information was privileged.
[3] The trial court did not make written findings of fact and conclusions of law on its rationale for the imposition of sanctions against Eymann and Jones.
[1] CR 26 has undergone some changes over the years, which resulted in changes in subsectioning so that, for example, what was CR 26(b)(3) is now (b)(4), and what was CR 26(b)(4) is now (b)(5). In addition, CR 26's subsections are not identified the same as in the federal rule. Thus, CR 26(b)(4) corresponds to Fed.R.Civ.P. 26(b)(3), and CR 26(b)(5) corresponds to former Fed. R.Civ.P. 26(b)(4). Amendments made in 1993 to the federal rule significantly changed Fed. R.Civ.P. 26(b)(4), concerning discovery from experts, and added Fed.R.Civ.P. 26(a)(2), also relevant to discovery from experts. These changes have not been incorporated into this state's CR 26. Accordingly, with one exception, which is identified, only federal cases considering the rule prior to the 1993 amendments are cited in this opinion.
[2] Although this case addresses the federal rule after the 1993 amendments, the court concluded that those amendments did not alter the principle that attorney's opinion work product is not discoverable from an expert.
[3] Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), the leading case on the work product rule, arguably created three categories of work product, i.e., ordinary factual work product, oral statement memoranda work product, and mental impressions work product. Lewis H. Orland, Observations on the Work Product Rule, 29 Gonz.L.Rev. 281, 294 (1993-1994) (but noting that the decision in Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) might be read to combine the latter two categories). CR 26 recognizes two, essentially collapsing the latter two categories.
[4] The court's holding in Pappas v. Holloway, 114 Wash.2d 198, 787 P.2d 30 (1990) accords with Professor Orland's recommendation in his recent article that "the mental impressions of the lawyer and other representatives of a party are absolutely protected, unless their mental impressions are directly at issue." Lewis H. Orland, Observations on the Work Product Rule, 29 Gonz.L.Rev. 281, 300 (1993-1994).
[5] Although this case was decided based upon the federal rule after the 1993 amendments, it is sound for the proposition stated here.
[6] The majority uses this term to refer to information and conversations protected under the attorney-client privilege and materials protected by the work product doctrine. The two are different in a number of respects, but relevant here is the notion that insofar as work product is concerned, nomenclature is not dispositive. See 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2023, at 335 (2d ed. 1994) (work product materials not beyond the scope of discovery as "privileged" under Fed.R.Civ.P. 26(b)(1), but they have been referred to as subject to a "qualified privilege"; nomenclature not a matter of importance).
[7] The trial judge referred to the possibility of unrecorded conversation between Mr. Buske and petitioners. This is a serious matter, as she said, but I am not convinced on this record that disqualification is justified as the least sanction appropriate based upon the mere possibility of improper unrecorded conversation between petitioners and Mr. Buske. The trial judge also said that Winston Cashatt did not violate the rules. While this might be a basis for some differing treatment, the uncertainty about whether the trial judge imposed the least severe sanction appropriate to the circumstances unfortunately remains.

I note that a footnote in the brief of amicus Washington State Trial Lawyers Ass'n states that Winston Cashatt voluntarily withdrew as counsel for plaintiffs following disqualification of petitioners. Br. of Amicus Curiae Washington State Trial Lawyers Ass'n at 1 n. 1.